# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT, DECEMBER TERM, 1833.

[PHILADELPHIA, JANUARY, 11, 1834.]

## ! BENNET *against* BITTLE and Another.

IN ERROR.

A demise or conveyance of a " *barn*," without other words being superadded to extend its meaning, will pass no more land than is necessary for its complete enjoyment.

Any entry by the landlord on the premises demised, against the will or wishes of the tenant, is not an eviction in point of law, which will suspend the rent. But if the landlord ejects, expels, evicts, or turns out the tenant, and prevents his enjoyment of the premises for which the rent is payable, the rent will be suspended; and whether there has been such an eviction, in point of fact, is a question for the jury.

ERROR to the Court of Common Pleas of *Delaware* County.

In the court below, an action of *replevin* was brought by *Lewis Bennett*, the plaintiff in error, against *William Bittle* and *Josiah Moore*, the defendants in error, in which *Moore* made cognizance as the bailiff of *Bittle*, who avowed for rent in arrear. The plaintiff replied, no rent in arrear, and an eviction of part of the premises leased.

On the trial, the defendants gave in evidence a lease from *William Bittle* to *Lewis Bennett*, dated the 9th of *February*, 1830, of which the following are the material parts:

" Be it remembered, that *William Bittle* has leased to *Lewis Bennett*, the messuage, tenement or tavern-house, barn, sheds, &c. with four lots of land, on the north-east side of the *Westchester* road, in the township of *Haverford*, and county of *Delaware*, known by the name of the Spread Eagle Tavern, to hold the same for one year from the first day of *April* next ensuing, the said *Lewis Bennett* yielding and paying to the said *William Bittle*, the rent or sum of three hundred and seventy-five dollars, together with the price of the license

for keeping the public house, and all the taxes that may be levied upon the said premises for the year 1829. It is further agreed to pay the rent half yearly."

After having proved that *Bennett* went into possession of the premises, under this lease, soon after the middle of *April,* 1830, and remained in possession until the last of *March,* 1831, the defendants closed their case.

The plaintiff then examined several witnesses, from whose evidence it appeared, that about the first of *May,* 1830, two men and a boy employed by *Bittle,* hauled manure out of the barn-yard. They were hauling it the greater part of one day, and they afterwards returned to haul more. *Bennett* was not at home on the first day. He afterwards reproved *Bittle* for taking away the manure, who replied, he would do as he pleased. Some further dispute then took place between them. *Bittle* also turned cattle into the barn lot; one day seven, and the next day ten, and kept them there more than two weeks, putting them in in the morning, and taking them out at night. *Bennett* forbade his putting cattle into the lot, and told him he should charge him the same that he did for drove cattle. *Bennett* used the barn and lot, but each insisted that they were his. *Bittle* asserted that they were excepted from the lease, which the other denied. *Bittle* on one occasion said, that *Bennett* had put up the bars, and four of the cattle were out, and three in the field, and he would make *Bennett* find them. The latter answered, that he would not find them, but would charge him for those that were in the field. *Bittle* said, that if he had rented the lot to *Bennett,* it was his, and the witness added, that *Bennett* had convinced *Bittle* that the lot was his, and he agreed that *Bennett* should take out the cattle and drive them home. On the same day, *Bennett* took the cattle out of the lot, and put them into *Bittle's* field over the road.

In a conversation between *Bennett* and a witness, in reference to the lease, he stated, that he did not get a foot of land on that side of the road on which the barn lot was situated, except half the barn. At another time he stated to the same witness, that he would like to rent the barn field of *Bittle,* but he could not spare it; he wanted it for pasture. *Bittle* put a fence across it either in *April* or *May,* 1830, but after the dung was hauled away, *Bennett* had possession of it, and continued to occupy it until the expiration of the lease. The lot in question contained about eleven acres.

Other evidence was given on both sides, tending further to show the understanding of the parties, as to what was intended to be embraced by the lease, which it is unnecessary to state.

When the evidence was closed, the president judge delivered to the jury the following

CHARGE.—" On the question, what premises were leased by *Bittle* to *Bennett,* it has been broadly urged, that by the terms of the contract, and the legal interpretation of the lease, by the term barn, the

(Bennett *v.* Bittle and another.)

lot or field in which it stood, passed.   Although the attention of the court has not been asked, it is proper to say, that I do not think that necessarily follows.   All contracts are to be construed according to their subject-matter:—If the late Mr. *Anderson* had leased a house and two lots on the east side of the road, and the barn on the bank of the creek, it does not follow that the field in which it stands is also leased, but at most a passage to it.

" In the course of the argument the court has been asked by the plaintiff's counsel to instruct the jury, ' That any entry on the premises demised against the will or wishes of the tenant, is an eviction in point of law, and suspends the rent,' 1 cannot so instruct the jury. If such were the law, and if Mr. *Bittle* had entered the tavern of Mr. *Bennett,* after having been forbidden—had walked over his field, or without leave had walked into the little orchard and carried away a basket of apples or fine peaches, or in short committed any other trespass, it would, according to this position, be an eviction, and suspend the whole rent.   But the law is not so; in this, as in every other instance, it is more consonant to reason; it declares, that if the landlord takes the high-handed measure of entering upon the lands he has leased to his tenant, and ejects, expels, evicts, or turns out the tenant, and prevents him from enjoying and using the land, or a portion of it, which he had solemnly leased to him, thus preventing the tenant's enjoyment of the premises, in respect of which rent was to be paid, that would be an eviction which would suspend the rent; so that the inquiry with this jury will be whether *Bittle* did eject from, and dispossess *Bennett,* and thus evict him of any particular portion of the premises really demised to him, and for which the rent was to be paid; or whether *Bittle* merely did other wrongs short of eviction and expulsion, such as trespasses in the field or barn-yard. If the former, the rent for that half year is wholly suspended; and if the latter only, it affords the tenant no such defence."

The plaintiff excepted to the charge of the court.

The following specification of errors, was assigned in this court :

" 1. The court erred in charging the jury, that the lot in which the barn stood did not pass by the terms of the contract, and the legal interpretation of the lease.

" 2. The court erred in refusing to charge the jury as requested by the plaintiff's counsel, upon the question of eviction.

" 3. The court did not instruct the jury correctly upon the legal operation of the lease, and improperly restricted their inquiry upon the question of eviction under the evidence given in the cause.

" 4. The court erred in charging the jury that there must be an absolute expulsion, or turning out of the tenant to constitute an eviction, and they should have left it to the jury to decide whether the acts proved, did or did not constitute an eviction in point of law."

The cause was argued by *Edwards* for the plaintiff in error, and by *Tilghman* for the defendants in error, after which

The opinion of the court was delivered by

KENNEDY, J.—The first exception is, that "the court erred in charging the jury, that the lot in which the barn stood did not pass by the terms of the contract, and the legal interpretation of the lease." The president judge is not fully represented, I think, by the terms in which this error is assigned, in what he said to the jury on this point. The words of his charge are: (His Honour here stated the words of the charge.) In this, I think, he was certainly right. And it would require, I apprehend, a case connected with peculiar and special circumstances to be made out by evidence, in order to make the lease of a barn, by the word "barn," without more, carry with it also a lease of eleven acres of land, with which it happened to be inclosed. The word "*domus*" or "house," which, although adjudged to be *nomen collectivum,* 4 *Leon.* 16, has been said where it was used in a devise thereof, without the addition of the words "*cum pertinentiis*" not to be sufficient to pass the garden and curtilege. 2 *Ch. Ca.* 27. *Kielway,* 57. And in *Moore,* 24 pl. 82, a grant of a *messuage* which was formerly thought to be of more extensive signification than the word "*domus*" or "house," was held to include and pass nothing but the house and circuit of the house. This however may be going too far, because the curtilage and garden have been considered as par-cel of the house, and therefore will pass by a demise or conveyance of it, without the words "with the appurtenances," being added. *Carden* v. *Tuck,* Cro. *Eliz.* 89. *S. C.* 3 *Leon.* 214. *Hill* v. *Grange,* 1 *Plowd.* 171. *Smith* v. *Martin,* 2 *Saund.* 401, and note (2). And in the case of a grant or demise of a *house with the appurtenances,* it seems to be established as a general rule, that no more than the garden, orchard, curtilege and yard adjoining the house will pass with it, although other lands have been occupied with the house. *Blackborn* v. *Edg-ley,* 1 *P. Wms.* 603. *Smithson* v. *Cage,* Cro. *Jac.* 526. *Betsworth's Case,* 2 *Co.* 32. *Co. Lit.* 5 *b.* 56 *a. b. Hill* v. *Grange,* 1 *Plowd.* 171. 2 *Saund.* 401, note (2). But see *Cary,* 24, where a *messuage* was demised (*cum pertinentiis*), and certain lands had *been previously occupied therewith* for the *same rent* and by the *same words,* and by advice of the judges Lord Chancellor BROMLEY decreed, that the land should pass also. But the word "barn" is still of more limited signi-fication than that of "house," and a demise or conveyance of it with-out other words superadded to extend its meaning, would pass no more land than would be necessary for its complete enjoyment. In *Archer* v. *Bennett,* 1 *Lev.* 131, *S. C. 1 Sid.* 211, it was held, that a conveyance of "mills *cum pertinentiis*" did not pass the *close* on which they stood. There is certainly no good reason why a *close,* in which a barn stands, should pass by a grant of the "barn *cum per-tinentiis,*" more than for passing the *close* in which *mills* stand by a grant thereof *cum pertinentiis.* But in the case before us, the words "*cum pertinentiis,*' are wanting, which, perhaps, makes it still more strong against the plaintiff's claim.

(Bennett *v.* Bittle and another.)

The three remaining errors all relate to the same point, and present but one question, which is, Did the president judge charge the jury correctly as to what in law constituted an eviction? He was requested by the counsel for the plaintiff to instruct the jury " that any entry on the premises demised, against the will or wishes of the tenant, is an *eviction* in point of law, and suspends the rent." In reply to this, the president judge told the jury—(Judge KENNEDY here repeated the charge in the language of the judge who delivered it.) If the president judge had instructed the jury as the counsel for the plaintiff requested, the charge would have been manifestly erroneous; for an entry on the demised premises by the lessor, against the will, or even against the express prohibition of the tenant, without doing more, does not amount to an eviction, and consequently would not extinguish or suspend the payment of the rent. At most it is only a trespass, for which the tenant may obtain compensation in damages by an action of trespass. In *Roper* v. *Lloyd, T. Jones*, 148, which was an action of covenant for the non-payment of rent reserved under a lease for years of a messuage, &c., where the defendant pleaded that after the lease, the plaintiff had *separated, pulled down, taken* and *carried away* a *penthouse, fixed* and *annexed* to the *said messuage* and part of the premises demised, and detained it, before the rent became due, *et adhuc detinet*, to which the plaintiff demurred, judgment was given for him, " for," as the court said, " this was no suspension of the rent, but a trespass for which the defendant may have his action." So in *Harrison's Case, Clayton's Rep.* 34, where *A.* having made a lease of a house reserving rent, afterwards, during the lease, commanded the *breaking a partition wall* in the house; this was held no such re-entry into the house as will make an extinguishment of the rent; " for that must be a continuance of the possession, and *putting out the lessee.*" 18 *Vin. Abr.* 504, tit. Rent, (A. a.) pl. 11. In *Bushell* v. *Lechmore*, 1 Ld. *Raym.* 370, in an action of covenant by the plaintiff for rent, and eviction pleaded by the defendant, Lord HOLT said, " whether the plaintiff entered by virtue of any power, or whether he was a mere trespasser, if the defendant was *not evicted* it will be *no suspension* of the rent." In *Reynolds* v. *Buckle, Hob.* 326, in debt for rent, the defendant pleaded, that before the rent became due, the plaintiff entered upon him, but did not say that he *expelled* him, or *held him out*, and so issue was taken on *non intravit* and found, according to the report of the case, for the *defendant*. This seems to be a misprint of the word " defendant," instead of " plaintiff," and so alleged by Lord HOLT in the case of *Jones* v. *Boddinger, Comb.* 380, who, in speaking of it, says, " I take the case of *Reynolds, Hob.* 326, to be misprinted, for the *entry* is *no bar. Expulsion* makes the first part of the bar, and *holding out* the rest, the book saith. It was found for the defendant, which could not be, the judge *must* direct the jury otherwise." And again, in *Arnold* v. *Foot,* 3 *Keb.* 453, in debt upon an obligation and agreement to pay twenty shillings a year for the premises, so long as enjoyed, where the de-

(*Bennett v. Bittle and another.*)

fendant pleaded *entry* by the plaintiff before the 24th of *June,* 25 *Car.* 2, and before any rent became due, and that an ejectment was brought, and judgment had in Michaelmas term after; to which the plaintiff demurred, because it was not said *expulit* or *amovit,* nor that the plaintiff continued in possession, as it ought to be, being pleaded by way of suspension: but by way of eviction it were well enough, which the court agreed, in case it were payable as a rent.

Mr. *Chambers,* in his treatise on the law of *Landlord and Tenant,* lays it down, that " if the lessor enter *without ousting* the tenant, although he damages the premises *irreparably,* it will not be a sufficient entry to suspend the rent," p. 591. He refers to some of the cases cited above, and to two others, *Cherbern* v. *Rye, Cro. Eliz.* 341, and *How* v. *Broom, Goulds.* 125, which do not support his proposition; for POPHAM and GAWDY, Justices, thought that the entry of the lessor, and his pulling down the house on the demised land, was a suspension of the rent, although the tenant re-entered and enjoyed the land afterwards; but FENNER and CLENCH, Justices, doubted whether the rent was not revived by the re-entry of the lessee. Lord MANSFIELD, however, in *Hunt* v. *Cope, Cowp.* 243, declares, that to occasion a suspension of the rent, the rule of law is clear, there must be an *eviction* or *expulsion* of the lessee. And it seems to be settled, that if the lessee, after having been *evicted* by the lessor, re-enters and possesses again the demised premises before the rent becomes due, it is thereby revived. *Page* v. *Parr, Styles,* 432. 1 *Selw. N. P.* 432. 500. *Cibels* v. *Hills,* 1 *Leon.* 110. But if the lessor enter and oust the lessee, it is not material whether he (the lessor) continue his possession there or not; for having once entered and expelled the lessee, although he depart presently, the possession is in him sufficient to suspend the rent, until the lessee does some act that amounts to a re-entry. *Cibel* v. *Hills,* 1 *Leon.* 110. If the lessor enters and expels the lessee from part only of the demised premises, the latter may abandon and give up the residue; and by doing so, it is clear, that he thereby discharges himself from all liability to pay rent, which otherwise would have become due subsequently. *Smith* v. *Raleigh,* 3 *Camp.* 513. But if he should continue to possess and enjoy the residue, I will not say but that he may be made liable upon a *quantum meruit. Stokes* v. *Cooper, Ibid.* 514, in note.

It appears, then, from an unbroken chain of authority and decisions, that an *entry* of the lessor, *without an expulsion* of the lessee from at least some part of the demised premises, is insufficient to produce a suspension of the rent; it follows, that the court below were right in refusing to charge the jury as requested by the counsel of the plaintiff, and in directing them that nothing short of an *eviction* or *expulsion* from at least a portion of the demised premises, would be sufficient for that purpose. Whether an eviction was proved or not, was left entirely as a matter of fact to be decided by the jury, upon which I cannot perceive that the president of the court in delivering the charge, ventured to intimate an opinion. He seems to have met,

(Bennett *v.* Bittle and another.)

very fully and fairly the proposition contended for by the counsel of the plaintiff. And it was perhaps owing to a conviction resting on the mind of the plaintiff's counsel at the time, that his evidence at most tended only to prove a mere entry by the defendant against the will and consent of the plaintiff, that he was,induced to contend as he did, that such an entry amounted in law to an eviction. For if he had conceived that his evidence was, under any view that might be taken of it by the jury, sufficient to establish any thing beyond such entry, as for instance, an exclusion or holding of the plaintiff out of the possession and enjoyment of any part of the demised premises, he ought to have shaped his proposition accordingly, and to have asked the instruction of the court to the jury in regard to it; and in this way, it is more than probable, some of those things, which it has been alleged on the argument that the court in explanation of what in law amounted to an eviction ought to have told the jury, would have been mentioned by the court to them. But as the proposition of the plaintiff's counsel did not require any such illustration, there was nothing improper on the part of the court in omitting it.

The judgment of the Court below is affirmed.