By the Court, Nelson, Ch. J.
No case, I apprehend, has carried the doctrine of constructive eviction to the extent laid down by the court below. The most that can be made out of the facts are these: The landlord, (wilfully, if you please, though it was evidently through mistake,) undertook to let the *54 premises himself, before the expiration of the lease to the defendants and at the usual time for leasing in the city, by negotiating with the sub-tenant; and, on failing to agree with him, posted a bill on the premises, which continued till some short time before the year expired, when he abandoned all further interference. There was no interference by the landlord or by any one claiming under him, with the actual use or occupation of the premises. The lessees had the undisturbed possession by their sub-tenant, until his term expired, and they might have had it till the expiration of their lease. The only ground for saying there has been an eviction, is the possible injury to the defendants, arising out of the mistaken or ill-advised interference of tire plaintiff in the several attempts to lease the premises himself. This may, indirectly and remotely, have embarrassed the letting by the defendants, though it does not appear in the case that they interested themselves in any manner with a view to re-letting, or that they complained of or protested against the conduct of the plaintiff in the matter. They appear to have been perfectly passive and silent throughout.
Now, no general principle is better settled or more uniformly adhered to than that there must be an entry and expulsion of the tenant by the landlord, or some deliberate disturbance of the possession depriving the tenant of the beneficial enjoyment of the demised premises, to operate a suspension or extinguishment of the rent. The cases are collected and well considered by Mr. Justice Kennedy in Bennett v. Bittle and another, (4 Rawle, 339,) and they establish the proposition stated beyond all manner of doubt. It would be a work of supererogation to go over them again, after the full and satisfactory review there tallen. Dyett v. Pendleton, (8 Cowen, 727,) decided in the court for the correction of errors, shows only an application of the doctrine to an extreme case. That adjudication is not to be regarded as introducing a new principle, nor as establishing an exception to the general rule. There, the grossly lewd and immoral conduct of the landlord in the adjoining premises, (another part of the same dwelling,) was so offensive to *55 common decency, and accompanied with such riotous and outrageous disturbances, as effectually to destroy the quiet occupation and beneficial enjoyment of the demised tenement, and render it uninhabitable by respectable people. This was considered such a disturbance and destruction of the reasonable use and occupation of the premises, as amounted to a virtual expulsion of the tenant.
I admit, a wrong may have been committed in this case against the lessees, by interfering with the right of renting the demised premises, which belonged exclusively to themselves; but I am unable to see how it can be said, within any rule of law that has ever been established, that here has been such air invasion of their possession and enjoyment as will bar an action for .the rent.. Slander of their title by the landlord would embarrass and prejudice the letting; but no one would think of attaching to it the consequences contended for in this case. The law has provided a different remedy. So of a trespass committed upon the premises by the landlord. (Bennett v. Bittle and another, 4 Rawle, 339; Lawrence v. French, 25 Wend. 443, 445.)
The case of Burns v. Phelps, (1 Stark. R. 94,) is much relied on by the defendants ; but the decision there made must be confined to the facts upon which it was founded. It might have applied here, if the sub-tenant had quit during his term and left the store vacant, in consequence of any threats or improper interference of the landlord. The latter would not be permitted to recover rent from his lessees for the remaining unexpired term of the sub-tenant, whom he had virtually expelled from the premises. In this case there was no attempt to disturb him during his term. He left at the expiration of it because he could not agree about the rent for the next year. He never sought to lease again of the lessees, nor did they endeavor to lease to him. They must have known, or should have known, that they had the control of the store; and, for aught that appears in the case, they might have rented to Utter for the ensuing year had they taken any steps for that purpose. The failure is owing more to *56 their own remissness and neglect, than to the interference of the plaintiff.(a)
Judgment reversed.

 Further, as to what will produce a suspension, apportionment or extinguishment of rent, see, in addition to the cases cited by the chief justice, Lewis v. Payn, (4 Wend. 423 ;) Watts v. Coffin, (11 Johns. 495 ;) Hallett v. Wylie, (3 id. 44;) Etheridge v. Osborn, (12 Wend. 529;) Wagner v. White, (4 Harr. & Johns. 564;) 1 Hilliard’s Abr. 162 et seq.; 2 Whart. Dig. 203 et seq., 4th ed.; 1 Lomax’s Dig. 564 et seq.; 3 Kent’s Comm. 463 to 471, 4th ed.