Vermilya v. Austin.

---

## THOMAS VERMILYA v. JAMES A. AUSTIN.

It is settled, that if a tenant be evicted *by his landlord,* from the whole *or any portion* of the demised premises, the landlord cannot recover rent for the time during which the eviction continues.

The course of judicial decision on this point reviewed.

If an eviction be occasioned by the act of a third person, having a title superior to that of the lessor, the landlord, if the eviction is from a part only of the premises, may recover rent from the part which the tenant continues to enjoy.

Accordingly, if a partial eviction be occasioned by the act of municipal authority, having the right to take private property for public uses, then the rent should be apportioned, and the tenant is bound to pay a just compensation for such portion of the premises as he continues to occupy.

Where a landlord removed a fence, running in front of the demised premises, further in towards the house, and contracted the stoop; it was *held*, that to avoid the legal effect of the partial eviction, on the ground that it was the act of municipal authority, he must prove that it was done in obedience to the imperative order and direction thereof; and this is a question of fact for a jury.

A wrongful eviction of the tenant by the landlord not only suspends the rent so that no action for rent can be maintained upon the written agreement, but if the eviction continue during the whole term, no equitable action for the recovery of *quantum meruit,* or a reasonable compensation for the use and occupation of the residue of the premises, will lie at the suit of the landlord, although the tenant voluntarily continues to occupy such residue to the end of the term.  (See note to this case.)

THE plaintiff brought his action for three quarters' rent from 1st May, 1847, to 1st February, 1848, upon a written lease, not under seal, of a dwelling house and three lots, in the village of Harsimus, New Jersey, for one year from May 1st, 1847, to May 1st, 1848.  The defence set up by the defendant was eviction by the plaintiff—the lessor—from a part of the premises.  It appeared on the trial, that a few days after the tenant took possession, the side walk in front of the inclosed premises was widened by the landlord; the fence removed several feet nearer to the house; and the stoop and steps contracted, whereby a flower garden was injured, and the entrance to the house rendered less convenient.  The landlord alleged that the alterations were the act of the municipal authority of the town.  The substance of the evidence in support of that allegation is given near the conclusion of the succeeding opinion of DALY, J.  The cause was tried, and that question was submitted as one of fact for the jury, who found a verdict for the defendant.  Judgment was entered on the verdict, and was affirmed, on appeal, in December, 1848, when the following opinion was delivered.

*Andrew S. Garr* and *Charles W. Sandford,* for the plaintiff.

*Edwin W. Stoughton,* for the defendant.

By the Court. Daly, J.—The jury were instructed that if a tenant is evicted by his landlord from the whole *or any part* of demised premises, the landlord cannot recover any rent from the tenant while the eviction continues, and that if they were satisfied that the defendant had been evicted by the plaintiff from any portion of the premises in question, the plaintiff could not recover. With every disposition to relax the rigid character of this rule, if it could be done consistently with authority, I have examined the cases very fully, but find it to be too well settled.

The rule was first recognized in this state by Senator Spencer, in *Dyett* v. *Pendleton,* 8 Cowen, 731, who says, that " a tenant is not required to pay rent for the part of the premises which he retains, if he has been evicted by the landlord from the other part," and he remarks that it establishes the great principle that a tenant shall not be required to pay rent for the part of the premises which he retains, if he has been evicted from the other part by the landlord; that, as to the part retained, this is deemed such a disturbance, such an injury to its beneficial enjoyment, such a diminution of the consideration upon which the contract is founded, that the law refuses its aid to coerce the payment of any rent. The point did not necessarily enter into the decision of *Dyett* v. *Pendleton,* and as the reasons given by the learned Senator are not to be found in the older books of authority, from which the rule is derived, and are, in my judgment, of but little weight, I would, if the rule rested on this case alone, have little hesitation in disregarding it. The rule is thus stated in 6 Bacon Ab. : " Where the lessor wrongfully enters upon part of the land, the tenant is discharged from the payment of the whole rent till he be restored to the whole possession, that no man may be encouraged to injure or disturb his tenant in possession, whom, *by the policy of the feudal law, he ought to protect and defend ;*" and he refers to Coke Lit. 1,486, where the following passage occurs : " So it is if

the lessor enter upon the lessee for life, and put him out of possession, the rent is suspended in the whole, and shall not be apportioned for any part." If the rule had nothing else to support it but a maxim founded upon the feudal policy of tenures, it would be entitled, in this state, to little consideration. We have abolished tenures, with their incidents, and all land with us is declared to be allodial. But there is an old case in Ventris, (*Hodgkin* v. *Robson*, Vent. 276,) in which the reason of this rule is placed upon a different ground, and one that is as applicable at the present day as it was when that case was decided. Chief Justice Hale says, in delivering the judgment of the court, "If the lessor enter into part, by wrong, this shall suspend the whole rent, for in such case he shall not so *apportion his own wrong* as to enforce the lessor to pay any thing for the residue." And in a report of the same case, in Pollexfen, 142, it is said, "Entry and expulsion *into part* of the land, whether the greater or *lesser part*, shall make no difference, 't is a *suspension of the whole rent.*" This was, undoubtedly, the law down to the passage of the 11 Geo. II. c. 19, § 10, giving the action of use and occupation. Prior to that statute, the landlord's remedy was upon the demise, and he could only recover according to it. (5 B. & C. 332.) He was bound to set forth the local situation of the premises, the rent reserved, (Hob. 82,) and the period at which it became due, (Com. Dig. Pleader; 2 W. 14; 1 Salk. 262,) and any material variance in this respect was fatal. Indebitatus assumpsit could not be maintained, except upon a collateral promise to pay a sum in gross, or upon a new consideration as forbearance, or upon a promise to pay after the rent became due; (1 Brownlow, 14; 1 Rolle's Ab. 7; O. case, 3; Hob. 397; 3 Lev. 150; Bull. N. P. 138;) and actions of debt for use and occupation did not come into use until *Stroud* v. *Rogers*, 6 P. R. 63, in 6 Salk. 609. This statute was passed, therefore, to enable the landlord to recover in assumpsit a reasonable satisfaction when land was occupied and enjoyed, in all cases, except when the agreement was by deed, and where a certain rent was re-

served by parol demise, or by any form of agreement not by deed, to entitle him to make use of such agreement simply as evidence of the *quantum* of damages to be recovered. This statute, though it greatly relaxed the rigidity of the ancient practice and simplified the landlord's remedy, in no respect affected the reason of the rule laid down in Ventris. It was designed to avoid the difficulty of suing upon a demise, and was not intended to give a cause of action where none could be maintained before. (Holroyd, J., in *Hall* v. *Burges*, 5 B. & C. 332.) But since its passage, the impression appears to have been entertained that *indebitatus assumpsit* would lie upon a *quantum meruit* against a tenant, evicted by his landlord from part, if he continues to occupy the residue. (Note to *Stokes* v. *Cooper*, 3 Camp. 513 ; *Tomlinson* v. *Day*, 2 Bro. & Bing. 680 ; Rawle, 338 ; 15 Mass. 268 ; and *Lawrence* v. *French*, 25 Wend. 443 ;) and it is laid down accordingly as established doctrine in nearly all the elementary writers upon this branch of the law. (Arch. Land. and Tenant, 155 ; Taylor's Land. and Tenant, 300 ; 2 Roscoe's Real Actions.) It is thus succinctly stated in the last edition of Comyns' Landlord and Tenant, "Where there is no demise by deed, if after eviction from part the tenant continues to occupy the residue of the demised premises, he may be charged for such occupation upon a *quantum meruit*." (6 Law Library, 297.) But I find no adjudged case to that effect. On the contrary, the opposite has been expressly decided, and the ancient rule affirmed and acted upon, in *Briggs* v. *Hall*, 4 Leigh, 484. I confess I am not disposed to concur in the equity and good sense of the ancient rule, in its application to the affairs of man at the present day. It seems to me to be fraught with infinite inconvenience. If the slightest eviction by a landlord of his tenant from part of the premises releases the tenant from the payment of rent for the portion which he continues to occupy, I can conceive of cases, especially in long leases, where its operation would be inequitable and unjust. If the landlord evicts the tenant from part, he puts an end to the contract by his own act, and the tenant is

not bound to continue. (3 Camp. 513.) He may throw up
the premises, and sue the landlord for the breach of his con-
tract. In such an action, the court might take into consider-
ation, as the measure of his damages, the enhanced rent he
may be compelled to pay for equal accommodation, the ex-
pense of removal, and in fact any positive loss or injury he
might sustain in consequence of his removal. Yet if he
elects to remain, I see no reason why he should not pay a fair
equivalent for the beneficial enjoyment. But it is not our
province to legislate, but to declare the law as we find it, and
the rule in question is too well settled to be shaken.

What were the regulations of the town committee did not
appear. The encroachment upon the defendant's premises
was by the act of the landlord. The alterations were made
by his direction, and if he wished to avoid the effect of evict-
ing the tenant from part of the premises, he should have
shown that it was rendered necessary by and done in obe-
dience to the order and direction of the municipal authority
of the town. One of the witnesses said that he believed
that an order was made by the town committee. What that
order was did not appear, either by the production of the
order itself or by parol proof. Another witness said that the
repairs became necessary in consequence of the authorities
of the town having directed that the street should be regula-
lated, and that they were such as the grading of the street
required, and were done as well as they could be done under
the circumstances. He was corroborated by another wit-
ness. Of this, however, the jury and not the witness were
to judge from such evidence as they had before them, and
the question was necessarily submitted to them. The plain-
tiff should have been prepared with evidence to satisfy them
or to remove all doubt upon this point. (5 Wend. 127.)

We cannot disturb their finding, nor say that it was against
the weight of evidence. It was a question of fact, submitted
upon very loose and indefinite testimony, which could not
be disposed of by the court, but was exclusively for the jury.
(4 Rawle, 339.) The plaintiff would have been entitled to

Vermilya *v.* Austin.

an apportionment of the rent if he had established the fact satisfactorily by evidence; and if the jury had found clearly against the weight of such evidence, we would have set their verdict aside. As the case now stands, the defendant must have judgment.

Judgment affirmed.

NOTE.—The alterations made by the landlord continued during the whole term. The tenant, nevertheless, voluntarily continued to occupy the premises until the lease expired, May 1st, 1848.

The plaintiff, afterwards, brought a new action, alleging in his complaint the special circumstances claimed by the defendant to amount to a partial eviction, and the voluntary continuance of the defendant in the occupation, and insisting that—although by reason of the said alleged eviction he was precluded from recovering any rent under the said written agreement—yet there was an implied and equitable obligation, on the part of the defendant, to pay to him a reasonable compensation for the use of the premises, subsequent to the said eviction, and that he reasonably desired to have, &c., for such subsequent use and occupation, a sum named, for which he demanded judgment.

The defendant, in answer, set up, by way of defence, the eviction by the defendant, and also the former judgment in bar of the action.

This second suit was brought to trial before Judge WOODRUFF, when the judgment record in the former suit was produced and read in evidence, and it was thereupon admitted by the counsel for the parties, that no change in the possession or occupation of the premises took place after the eviction alleged to have occurred prior to February 1st, 1848; and that the only question to be tried and determined herein was, whether, notwithstanding the tenant was evicted by the landlord from a part of the premises hired by the tenant for one year, by agreement, not under seal, the landlord may (if the tenant voluntarily continue to occupy the residue for

the balance of the year) recover on a *quantum meruit* a reasonable compensation therefor, and notwithstanding the former verdict and judgment; and whether, notwithstanding the continuance of such eviction, the landlord might not recover at least a reasonable compensation for such voluntary use and occupation of the residue from the 1st day of February, 1848, to the 1st day of May, 1848.

And thereupon it was held, by Woodruff, J.,—

*First.* That by the admissions in the pleadings and the record aforesaid, the fact of wrongful eviction of the defendant by the plaintiff was conclusively established in such wise, that the fact of wrongful eviction could not be controverted in this action by any parol evidence on the part of the plaintiff to show either that no such eviction had taken place, or that such eviction was lawful or under elder title.

*Second.* That such wrongful eviction of the defendant from a part of the premises, suspends the rent, and that the plaintiff cannot recover for the use and enjoyment of the residue of the premises while such eviction continued; and, therefore, whether the record and judgment in the *former* action be or be not a bar to a recovery for the use and occupation, from 1st May, 1847, to 1st February, 1848, that the eviction aforesaid having *continued during the whole term* of the hiring, this action for a compensation for the use and occupation of the residue of the premises cannot be sustained.

And judgment was accordingly ordered for the defendant.

On appeal to the general term, these conclusions were sustained; and on appeal to the Court of Appeals, the judgment was affirmed. (See *Christopher, executor of Vermilya*, v. *Austin*, 1 Kernan, 216.)