# NEW-YORK COMMON PLEAS.

### THEODORE T. EDGERTON agt. ALBERT W. PAGE.

In an action by a landlord to recover rent, the tenant cannot sustain a plea of eviction in bar, in extinguishment of the rent, or a *suspension* of the rent, while he *continues in possession* of the demised premises for the whole period for which rent is claimed, however much he may be disturbed by the landlord in the beneficial enjoyment of the premises during the term. The eviction must amount to a *deprivation of possession*.

The possession must be given up by the tenant in consequence of the acts of the landlord, and they must be acts which warrant and justify in so doing, or the landlord must take the possession forcibly from the tenant. There must be a change of possession. It must be out of the tenant and in the landlord.

And the election by the tenant not to renew a lease which he alone had the right to determine, at the end of the term for which rent was claimed, and to which he held possession, cannot be considered as an abandonment of the premises, so as to create a suspension of rent which had accrued during the previous term. [BRADY, J. *dissenting*. *This decision reverses the same case at spe..ual term, Ante vol.* 12, *p.* 58.]

In ʻ.ɪ action for rent, the defendant cannot set up in his answer as a *counterclaim* facts showing that, during the term, the plaintiff committed acts injuring his quiet enjoyment of the premises, and which would, as alleged, entitle the defendant to what was formerly an action on the case against the plaintiff. (*As a decision on this point, see Drake* agt. *Cockroft, ante vol.* 10, *p.* 377.)

*General Term, May,* 1856.

APPEAL by the plaintiff from a judgment at special term.— The facts of this case will be found reported *ante vol.* 12, *p.* 58.

BRITTON & ELY, *for plaintiff.*
JOHN GRAHAM, *for defendant.*

DALY, Judge.   The matters set up by the answer are relied
upon, either as a bar to the action, or as establishing a claim
of damages against the plaintiff, which may be set up in this
action by way of counter-claim.

It is not denied by the answer—indeed, the answer admits
that the defendant continued to occupy during the whole period
for which rent is claimed; and the first question presented is,
whether a tenant who thus continues in the occupation of the
whole of the premises demised, is released from the payment
of rent because the landlord has committed acts which have
diminished the beneficial enjoyment of the premises during the
period for which rent is sought to be recovered.

To occasion a suspension or extinguishment of rent, there
must be an eviction of the tenant; and, as this was understood
before the decision of *Dyett* agt. *Pendleton,* (8 *Cow.* 727,) it
meant that the tenant must be *put out of possession* either of
part or the whole of the premises demised. (*Co. Lit.* 1486;
*Dowel* agt. *Andrews, Hob.* 190, *a; Reynolds* agt. *Buckle, id.* 326,
*a; Hodgson* agt. *Robson, Vent.* 276; *Pollfx.* 142; *Turnbull* agt.
*Bullock, Styles,* 446; *Salmon* agt. *Smith,* 1 *Wm. Saund.* 204,
*& note* 2; *Hunt* agt. *Cope, Cowp.* 243.)

Thus the form of the plea as given in *Saunders* was, " and ex-
pelled and removed him, the said Samuel, from his possession
thereof, and *kept out* him, the said Samuel, from his possession
thereof." This was the form of the plea in *Dyett* agt. *Pendle-
ton,* (4 *Cow.* 584:) and as some misconception has prevailed as
to what was actually determined in the ultimate disposition of
this case by the court of errors, it may be well to review that
decision.

To maintain the plea that the plaintiff had expelled him from
the possession, the defendant offered to prove, upon the trial,
that the plaintiff introduced into the part of the house which
he occupied, lewd women and prostitutes at various times,
keeping them all night for the purpose of prostitution; that he

was in the habit of introducing other men, who, with himself, kept company with the women, and who, together, kept up such noise and disturbance throughout the night, using obscene and indecent language, as to disturb the rest of persons sleeping in the part of the house demised to the defendant— in consequence of which the defendant was compelled to leave the house before the rent became due for which the action was brought.

It was held, by the supreme court, (4 *Cow.* 584,) that the evidence was properly excluded; that there could be no eviction without an *actual entry* and expulsion; that the matter complained of simply amounted to a nuisance, which the defendant could have abated by applying to the police; that he was under no necessity, physical or moral, to abandon the premises; and that his abandonment was voluntary, and was no answer to the covenant for the payment of rent.

The decision of the supreme court was reversed by the court of errors, (8 *Cow.* 727,) and that judgment of reversal determined merely that proof of an *actual entry* was not essential to establish an eviction, but that, without an actual entry upon the premises, the landlord might be guilty-of acts which, by compelling the tenant to quit the premises, would amount to an eviction, and that upon the evidence excluded at the trial the jury could have found that the defendant was justified in quitting the premises, and having done so, that he was released thereafter from any further liability under the covenants in the lease for the payment of rent.

This is all that I understand to have been decided by that case, though it has been supposed to have gone much further. Thus SAVAGE, Ch. J., in *Lewis* agt. *Payne*, (4 *Wend.* 428,) said, " In *Dyett* agt. *Pendleton*, it seems to have been held that ' *any obstruction* by the landlord to the beneficial enjoyment of the demised premises, or a diminution of the consideration of the contract, by the act of the landlord, amounts to a constructive eviction.' " The only foundation for this opinion is to be found in one of the reasons assigned by Senator SPENCER, who de-

Edgerton agt. Page.

livered an opinion for reversal, to show that actual entry was not essential to an eviction.

In referring to the rule, that a tenant who has been evicted from part of the premises by the act of the landlord, is not obliged to pay rent for the part he retains until he is restored to the whole possession, Senator SPENCER says, " As to the part retained, this is deemed such an injury to its beneficial enjoyment, such a diminution of the consideration upon which the contract is founded, that the law refuses its aid to coerce the payment of any rent. Here, then, is a case where actual entry and physical eviction are not necessary to exonerate the tenant from the payment of rent; and if the principle be correct as applied to a part of the premises, why should not the same principle equally apply to the whole property demised, where there has been an obstruction to its beneficial enjoyment, and a diminution of the consideration of the contract, by the acts of the landlord, although these acts do not amount to a physical eviction."

But the ground here taken, that any obstruction by the landlord to the beneficial enjoyment of the premises demised, or diminution of the consideration of the contract, amounts to an eviction, was not essential to the decision of *Dyett* agt. *Pendleton*. It is not, and never was the law, nor is the case an authority for any such proposition or principle. If any obstruction to the beneficial enjoyment or diminution of the consideration of the contract will exonerate the tenant from the payment of rent, then any act of trespass on the part of the landlord will have that effect, and it is well settled that something more than a mere trespass is essential to an eviction, however much the act of trespass, or successive acts of trespass, may obstruct the tenant in the beneficial enjoyment, or diminish the consideration of the contract.

" The title to rent," says BACON, (6 *Bac. Abr. Rent L.* 44,) " is founded upon this, that the land demised is enjoyed by the tenant during the term included in the contract, for the tenant can make no return for a thing he has not. If, therefore, the

tenant be deprived of the thing letten, the obligation to pay the rent ceases."

But it was held before BACON's time, (*Hawson's case, Clayton,* 34; 18 *Vin. Abr.* 504, *title, Rent,* (*a l,*) *pl.* 11; *Bushell* agt. *Lechman,* 1 *Ld. Ray.* 369,) and uniformly adhered to since, that a mere entry and trespass upon the land by the landlord, is not such a deprivation, and will not suspend or discharge the payment of rent. In the first of these cases, (*Hawson's case,*) the court held that the breaking of a partition wall by the landlord will not extinguish the rent, for there must be a continuance of the possession and a putting out of the lessee.

In *Vermilyea* agt. *Austin,* (2 *E. D. Smith,* 203,) I had occasion to point out that Senator SPENCER had mistaken the reason of the rule, that eviction from part by the act of the landlord, shall suspend the rent of the whole. It is not founded upon the diminution of the consideration of the contract, or the injury to the beneficial enjoyment, and the mistake led to the erroneous conclusion he arrived at. This rule, in respect to the soundness of which there was great contrariety of opinion before it was definitely settled and recognized, (6 *Bac. Abr. M* 2,) was founded upon the policy of the feudal law, by which the landlord was bound to protect and defend his tenant; and such being the obligation springing out of the relation, the landlord who had wrongfully dispossessed the tenant of part, would not be allowed to *apportion* his own wrong, and recover *pro rata* from the residue of the land, but the rent was suspended until the landlord fulfilled his obligation, and restored the tenant to the possession of the whole. (*Co. Lit.* 148*b. Hodgkin* agt. *Roson, Vent.* 276; *Pollfx.* 142; *Brooke Abr. tit. Extinguishment,* 48; *Rolle Abr.* 938; 6 *Bac. Abr. Rent, M.* 1, *p.* 49.)

In *Dyett* agt. *Pendleton,* the tenant abandoned the premises before the rent became payable, and all that was or can be said to be decided by the case was, that to constitute an eviction it was not necessary that the landlord should actually enter and expel the tenant from the possession, but that he might be guilty of acts which, by compelling the tenant to abandon the premises, would have the same effect as if there had been an actual entry

and a physical expulsion. In other words, that there might be constructive, as well as mere physical eviction, which was very well illustrated by Senator SPENCER, by supposing that the landlord in that case had converted the portion of the house which he occupied into a small pox or yellow fever hospital, or had made a deposit of gunpowder under the tenant, in which case the abandonment of the premises by the tenant might become a matter of necessity, and his expulsion accomplished as effectually as if the landlord had entered and turned him out by force.

" Whether," says CRARY, the other senator who delivered an opinion in favor of reversing the judgment of the supreme court, " it was an unnecessary and voluntary abandonment of the premises on the part of the tenant, or compelled by the moral turpitude of the landlord, is the only question material to be considered."

In *Jackson* agt. *Eddy and others*, (12 *Miss.* 209,) a case in many respects resembling the present one, and to which I shall have further occasion to refer, it became essential to ascertain exactly what was determined by *Dyett* agt. *Pendleton*, and the principle or rule established by that case is thus stated : " Any act of the lessor which defeats the enjoyment of the property by the lessee, is a good bar to the demand for rent, *provided the lessee abandon the premises in consequence of such wrongful act of the lessor.*"

The court of errors, in establishing this doctrine of constructive eviction, made no change in the law. They overturned no principle or rule established by previous decisions, but merely extended the application of an acknowledged principle, in a case which justified the extent to which they carried it. This was the view taken of the case by NELSON, J., in *Ogilvie* agt. *Hull*, (5 *Hill*, 54,) and by BRONSON, J., in *Gilhooly* agt. *Washington*, (4 *Com.* 219.) It was entirely consistent with the existing law to hold that a landlord who compelled a tenant to abandon the premises demised, by acts which rendered the further occupation of them impossible, inconvenient, or useless, evicted the tenant as fully, to all intents and purposes, as if he

had gone upon the premises and ejected him from the possession by force.

In *Cohen* agt. *Dupont*, (1 *Sandf. S. C.* 260,) the tenant left in consequence of a series of petty annoyances on the part of the landlord, which seriously injured the tenant's business, and it was held to be an eviction. In *Jackson* agt. *Eddy*, (*supra*,) the tenant occupied the store and cellar of a building, the upper part of which was occupied by the landlord as a grocery store, and the dripping from the salt, tar, &c., in the loft, or floor occupied by the landlord, passed through the floor into the store occupied by the tenant, upon his sugar, hogsheads, brooms, &c. The tenant complained, and the landlord tried to prevent further injury by sprinkling saw-dust on the floor above, which only stopped the leakage temporarily. The tenant left before the commencement of the last quarter, and sent the key to the landlord, who refused to receive it. The action was for the last quarter's rent, and it was held that the tenant, having abandoned the premises before the beginning of the quarter for which rent was claimed, in consequence of a disturbance in the beneficial enjoyment by the act of the landlord, the action could not be maintained, and the law upon the subject is thus succinctly stated by the court:—

" The consideration of the lessee's undertaking to pay rent, is the quiet, peaceable, and indisputable possession of the premises leased, and is, in its nature, a condition precedent to the payment of rent. If the lessor, by any wrongful act, disturbs that possession, which he should protect and defend, he thereby forfeits his right, and the lessee may abandon the possession of the premises leased, and *thereby* exonerate himself from liability to pay rent."

In all these cases the tenant abandoned the premises, and thereby discharged himself from all further liability for rent ; but no case has ever gone the length of holding, that a tenant, disturbed in the beneficial enjoyment, by the act of the landlord, may continue in the possession of the whole premises and be exempt from the payment of rent. There must be an eviction of the whole or of some part, and there can be no eviction

if the tenant continue in the possession of the whole, however much he may be disturbed in the beneficial enjoyment. For that disturbance, as has been already shown, the landlord is liable as a trespasser, but it does not put an end to the contract. Every eviction includes an ouster, either of the whole or of some part. (6 *Bac. Abr. by Bayley, note* 44; 1 *Ld. Ray,* 369.) It must amount to a deprivation of possession. The possession must be given up by the tenant in consequence of the acts of the landlord, and they must be acts which warrant and justify in so doing, or the landlord must take the possession forcibly from the tenant. In short, there must be a change of possession. It must be out of the tenant and in the landlord.

This is manifest upon referring to the early cases. In *Cibel* agt. *Hills,* (1 *Leon.* 110; 18 *Vin. Ab. Rent,* 11 *Pl.* 2, *p.* 513,) it was held that the possession must be in the landlord, to suspend the rent. In *Reynolds* agt. *Buckle,* (*Hob.* 326, *a,*) the defendant pleaded that, before rent due, "the plaintiff did enter upon him, but did not say that he did expel him or hold him out :" and it is said, in the report of the case, that as a plea in bar it was insufficient. In *Jones* agt. *Boddington,* (*Comb.* 380,) it is said, expulsion makes the first part of the bar, and holding out, the rest. In *Arnold* agt. *Foot,* (3 *Keb.* 453,) the plea was declared bad, because it is not said *expulit* or *amovit,* nor that the plaintiff continued in possession, as it ought to be, being pleaded by way of suspension; and in *Hunt* agt. *Cope,* (*Cowp.* 243,) ASTON, Justice, said, "All the cases in the books suppose the lessee to be put out of possession; therefore, merely saying that he is deprived of the enjoyment of the premises is not sufficient," and the plea was held no bar. This distinction which runs through all the early cases, that it is the deprivation of the possession of the whole, or of some part, by the wrongful resumption of it on the part of the landlord, which works the suspension or extinguishment of rent, has been recognized and acted upon in several American cases. (*Briggs* agt. *Hall,* 4 *Leigh,* 485; *Jackson* agt. *Eddy, supra; Bennet*·agt. *Bittle,* 4 *Rawle,* 339; *Cram* agt. *Dresser,* 2 *Sandf. S. C.* 120; *Wilson* agt. *Smith,* 5 *Yerger,* 399.)

In this last case it is said, "an interference by the landlord, unless the ten'ant be wholly *evicted and expelled* from the possession is not a discharge from the payment of the stipulated compensation; but makes the enterer upon his possession a trespasser, liable to make satisfaction for the damages in the appropriate action;" and it was further remarked that the relation of tenant continues as long as the tenant continues to hold the possession. Sometimes the distinction between a mere trespass and an eviction is very nice, as in *Briggs* agt. *Hall,* (*supra,*) where the landlord entered upon a farm he had demised to the tenant, and mowed the meadow land. This was held to amount to an eviction, because the principal enjoyment and possession of a meadow land is the taking and using the hay, and the man who does this is, to every rational purpose, the possessor.

This was an extreme case, for declaring that the possession of part of the premises demised was in the landlord and not in the tenant; but it shows that this change of possession must take place, or there is no eviction.

In the case before us, the defendant remained in possession until the full end of the term for which rent is claimed. He has not, therefore, been evicted, and his answer is no bar to the action for rent. The acts of which he complains would entitle him to maintain an action against the plaintiff equivalent to what was formerly denominated an action on the case; and it only remains to consider whether this cause of action can be set up in this suit by way of counter-claim.

He claims that he has sustained damages to the amount of two hundred and fifty dollars in the hindrances, obstructions, delays and difficulties occasioned to, in and about the prosecution of his business: and further sets up that, during the quarter in question, large quantities of water were poured and thrown out of the rear windows of the plaintiff, wantonly, maliciously and negligently, by the plaintiff and his servant, so as to run into and upon the premises leased to the defendant, whereby his property there deposited, consisting of fruits and other 'articles, were injured and destroyed to the amount of one

hundred and fifty dollars. Is this a cause of action arising out of the contract which constitutes the foundation of the plaintiff's claim in this action? or is it connected with the subject of the action within the meaning of the 150th section of the Code?

Before the last amendment of this section, we held, in *Levy* agt. *Bond*, (1 *Smith*, 169,) that damages for a tortious intrusion upon the demised premises, by the landlord as a wilful trespasser, not constituting a breach of the contract declared on, could not be set up, by way of recoupment, in an action brought to recover the rent, and after the section was amended in its present form we held, in *Drake* agt. *Cockroft*, (10 *How. Pr. R.* 377,) that, in an action by a landlord to recover rent, the tenant could not set up, as a counter-claim, a mere trespass upon the demised premises and destruction of personal property committed by the landlord. In that action, the answer set up that the defendant occupied a stable which constituted a part of the premises demised, and that the plaintiff, during the defendant's temporary absence, broke open the stable, and wilfully took and removed the personal property of the defendant therein, which was injured, destroyed and lost to the defendant. We held that, as a cause of action, this was wholly independent of the contract for the payment of rent; that the trespass for which damages was claimed could not be regarded as connected with the contract, nor with the subject of the action, which was money due upon a contract of hiring; but it was admitted by Judge WOODRUFF that an interference with the *possession*, an eviction total or partial, or an unlawful injury to the premises in violation of the contract of letting, might, under a liberal construction of the Code, constitute a counter-claim.

The answer in this case shows a disturbance of the beneficial enjoyment, but no interference with the possession. Any trespass upon the premises demised is a disturbance of the beneficial enjoyment, but an interference with the possession is either an entry under color of right or assumption of title, or an absolute deprivation of the possession in whole or in part. The answer does not show an eviction total or partial, or any

Edgerton agt. Page.

unlawful injury to the premises in violation of the contract. There is implied in the contract, being a demise or letting for a year, a covenant for quiet enjoyment; (*The Mayor of New-York* agt. *Mabie,* 3 *Kern.* 151;) but a covenant for quiet enjoyment, whether express or implied, relates only to title, and not to the undisturbed enjoyment of the premises demised, where there has been no eviction, or entry under assumption of title. (*Howard* agt. *Doolittle,* 3 *Duer,* 474; *The Mayor of New-York* agt. *Mabie, supra; Lloyd* agt. *Tomkies,* 1 *T. R.* 671; *Platt on Covenants,* 312–320.)

Nothing of this kind appears by the answer. It sets up a trespass not made under an assumption of title nor resulting in an eviction, and therefore no breach of the contract of hiring. It is not, then, a cause of action, arising out of the contract, and as the contract is here the subject of the action, it cannot be said to be connected with the subject of the action.

The judgment of the special term should be reversed, and judgment given for the plaintiff on the demurrer.

INGRAHAM, First Judge. I concur with Judge DALY in the opinion, that the matters set up in the answer do not constitute an eviction, which either suspends or extinguishes the rent sued for. Down to the period when the rent became due, the defendant remained in full and sole control of the demised premises. The plaintiff neither took possession of any part of the premises, nor did the defendant abandon them prior to that time. The acts of the plaintiff which are complained of were mere trespasses, for which the defendant could have recovered his damages, but they did not amount to an eviction, nor would they, in my judgment, have authorized an abandonment of the premises. But whether they were sufficient to justify the abandonment or not, the defendant did not leave the premises, and therefore cannot claim to be relieved from the payment of the rent of premises which he had the entire use of during the whole term. The election not to renew a lease which he had alone the right to determine, cannot be considered as an aban-

Edgerton agt. Page.

donment of premises so as to create a suspension of rent which had accrued during the previous term.

The case of *Cohen* agt. *Dupont* (1 *Sandf. S. C. R.* 260) does not conflict with these views, because if the cause of offence there was sufficient, the tenant actually left the premises before the rent became due.

· The defendant sets up, in his answer, facts showing that during the term, the plaintiff committed acts injuring his quiet enjoyment of the premises. Upon the argument of this cause, I supposed these matters, set up by way of counter-claim, were not within the provisions of the Code on that subject, and were liable to the same objections as were stated in *Levy* agt. *Bond,* (1 *E. D. Smith,* 169,) and *Drake* agt. *Cockroft,* (10 *How.* 377.) I do not see anything, on further examination, to change that opinion.

In those cases we held that a mere trespass by the landlord, which did not deprive the tenant of his possession, was not a breach of the covenant of quiet enjoyment, and that it was necessary to establish a right to recover for such a cause of action, to show that the tenant was deprived of some part of the demised premises.

In *St. John* agt. *Palmer,* (5 *Hill,* 599,) Judge BRONSON says, " If the covenantee retains the possession, it is impossible that there should have been an eviction, and no action will lie, how ever hard the case may be."

The judgment at special term should be reversed.

BRADY, Judge, dissenting. I still adhere to the opinion expressed by me on the decision of the demurrer in this action, (12 *How.* 58,) that the answer sets up facts which are admitted to be true, and which constitute a defence to this action. I also adhere to the opinion, that this case is a much stronger one for the application of the doctrine of constructive eviction than *Cohen* agt. *Dupont,* (1 *Sand.* 260,) stated in the opinion referred to.

My understanding of Judge DALY's opinion is, that the defendant not having abandoned the premises during the quarter,

Edgerton agt. Page.

he was not evicted constructively or otherwise, and is not discharged. In answer to that view I state that, by the lease, the defendant was entitled to a renewal of his term, which he abandoned because of the acts set up in the answer, and that if there was no abandonment during the quarter for which the rent is alleged to have accrued, there was an abandonment of the premises for the further term, to which the defendant was entitled.

I am not aware that any case has yet arisen in the courts deciding the question directly, as to when and under what circumstances the defendant must abandon the premises to make an eviction perfect, although I think that in this case, as I have already stated, there was, in fact, an abandonment of the premises. I understand a tenant to abandon premises if he leave them before *his term* expires, or his right to possession ceases, without reference to the precise time when that abandonment takes place.

I also understand the abandonment to be perfect when a tenant, having a right to a further term, leaves the premises, upon the expiration of the original term, and that the rent accruing cotemporaneous with such abandonment does not change the relative rights and obligations of landlord and tenant as they existed immediately prior thereto. The law does not regard the fractions of a day. It seems to be conceded, that if the premises are abandoned before the rent becomes due, the eviction would be accomplished without reference to the part or portion which had expired or the period for which the rent is claimed.

In the case of *Jackson* agt. *Eddy* and others, cited by Judge DALY, the landlord tried to prevent further injury to his tenant from the causes complained of, and did so temporarily. In this case the landlord neither did nor attempted to do anything, although often requested, but wantonly, maliciously and negligently permitted the continuance down to the first of May, when the rent became due, of the injurious acts complained of. It presents, therefore, a very different state of facts on the merits. The case referred to is not in point on the question here con-

Edgerton agt. Page.

sidered, in my judgment; although it shows an eviction to have
resulted from acts of the landlord that were neither wanton nor
malicious, and. although he essayed to obviate their injurious
consequences. Here, however, the plaintiff acted wantonly
and maliciously. He knew of the disturbance complained of,
and made no effort to remove or prevent it. On the contrary,
he wantonly permitted it to continue, and acknowledges not
only that he did so, but that the defendant, his tenant, in con-
sequence thereof, was compelled to abandon the premises and
lose the benefit of his renewal. The defendant did not aban-
don the premises during the quarter, but he did during the con-
tinuance of the disturbance, which had not ceased, but was still
kept up, down to the time of such abandonment, wantonly and
maliciously, and hence the conclusion in my opinion at special
term, that the rent, in cases like the present, is suspended only
during the continuance of the acts complained of, unless the ten-
ant abandoned the premises whilst they continue, and *before* the
rent accrues, in which case they become a bar. It follows from
this, that if the disturbance cease before the rent becomes due,
and while the tenant is still in occupation, the rent may be re-
covered; and with equal propriety, that if the disturbance con-
tinue during the whole period of a part of the term during which
rent accrues, and down to the time the rent becomes due by the
agreement, the rent cannot be recovered, inasmuch as his right
to abandon continues down to the very moment he does so, and
more especially, as in this case, where he abandons the prem-
ises and a term thereof.

For these reasons, I think the judgment at special term
should be affirmed.

Note.—If it is settled that there may be a *constructive eviction* in any case,
it would appear that in such case the tenant can retain the possession of the
premises, and avail himself of his defence—the suspension of rent—during the
term, or the existence of the injurious acts. Because a constructive eviction is
an eviction in law, and not in fact. An actual eviction, or an eviction in fact,
is conceded to mean (as applied to these cases) an ouster—a putting out of pos-
session; and consequently a constructive eviction means a constructive ouster—
a constructive putting out of possession—just the opposite of the other,—in law,
interpreted to be out of possession; in fact, retaining possession.

And this appears to be the view taken of it by Senator SPENCER in *Dyett agt. Pendleton,* (8 *Cow.* 727,) when speaking of an eviction, as to part of the premises, exonerating the tenant from the payment of the rent of the whole, although holding possession of the other part. He says, " If physical eviction be not necessary, in the one case, to discharge the rent of the part retained, why should it be essential, in the other, to discharge the rent of the whole ? If I have not deceived myself, the distinction referred to settles and recognizes the principle for which the plaintiff in error contends, that there may be a *constructive eviction* produced by the acts of the landlord."

The court, in the prevailing opinion in this case, remarking upon the above decision in *Dyett* agt. *Pendleton,* says, " The court of errors, in establishing this doctrine of constructive eviction, made no change in the law. They overturned no principle or rule established by previous decisions, but merely extended the application of an acknowledged principle in a case, which justified the extent to which they carried it."

This would seem to concede that a constructive eviction may be applied to *part* of the premises, where there is an eviction as to the other part, and it seems no matter how small a part, as in *Briggs* agt. *Hall,* (4 *Leigh,* 485.) And unless the *reasons* for the rule applicable to evictions of part, as stated by the court in the prevailing opinion, prevents the rule from being applied to the whole, it would appear that a constructive eviction as to the whole premises is warranted. Such reasons, given in the earlier cases, were, it is said, that the rule was founded upon the policy of the feudal law, by which the landlord was bound to *protect and defend his tenant;* now, *a fortiori,* is the landlord bound not to obstruct or injure the tenant's beneficial enjoyment of the premises, which appears now to be the reasons for the rule. (1 *Kern.* 216.) If a constructive eviction be established as to a part of the premises, it is not perceived why the reasons for it may not be applicable to the whole, where the injurious acts of the landlord apply to the whole.

Perhaps the tenant would state the difference in this way :—The law has given me a good defence to the payment of my landlord's rent, where he obstructs or injures a part of my premises : that is, if the injuries amount to what lawyers call a constructive eviction, which leaves me in actual possession; but if these injuries, which amount to a constructive eviction, apply to the whole premises, I have no such defence, unless I move out.—[REPORTER.]