UTICA,
Aug 1825.

Pendleton
v.
Dyett.

---

## Pendleton *against* Dyett.

COVENANT for rent upon a lease dated October 15th, 1818, given by the plaintiff to the defendant, for the term rent, the tenant must show an actual expulsion before, and that it continued till after the rent due.

To sustain a plea of eviction, in bar of an action for

That the landlord is guilty of a nuisance, as bringing lewd women-near the premises which are so situate, that the tenant and his family are broken of their rest, and otherwise so much annoyed that he is obliged to leave the demised premises, and keep away on that account, is not sufficient to bar the landlord's claim for rent.

Eviction of the whole, or any part of the demised premises, is a good plea in bar, to an action either of debt or covenant, for rent.

of two, three, five, or eight years, but not for a less term than two years, of two rooms, or the whole of the second floor, and two rooms chosen by the defendant on the third floor of a certain house or store in Beaver street, corner of William-street, in the city of New York, at a rent $425 per annum, which the defendant covenanted to pay, and entered into possession of the demised premises.

The defendant pleaded, 1st, *non est factum ;*

2. That before any of the rent became due, to wit, on, &c. the plaintiff entered upon the demised premises, and ejected, expelled, put out and amoved the defendant, and kept and continued him so ejected, expelled and amoved from thence hitherto.

Replication, denying the expulsion and issue.

The cause was tried at the New York Circuit, June 19th, 1823, before EDWARDS, C. Judge.

On the trial, the counsel for the defendant produced receipts for rent to the 1st February, 1820, and offered to prove that about that time the plaintiff introduced into the house demised, lewd women or prostitutes, and continued this practice from time to time and at sundry times, keeping and detaining them in there all night for the purpose of prostitution; that such women would frequently enter the house in the day time, and, after staying all night, would leave it by day light in the morning; that the plaintiff sometimes introduced other men into the house, who, together, with him, kept company with the lewd women or prostitutes during the night; that on such occasions, the plaintiff and the women, being in company in certain parts of the house not included in the lease, but adjacent and in the plaintiff's occupation, were accustomed to make a great deal of indecent noise and disturbance, the women often screaming extravagantly so as to be heard throughout the house, and by the near neighbors; and frequently using obscene and vulgar language, so loud as to be understood at a considerable distance; that such noise and riotous proceedings being frequently continued all night, greatly disturbed the rest of persons sleeping in other parts of the house, and particularly in the parts demised; that these practices were matter of conversation and

reproach in the neighborhood; and were of a nature to draw, and did draw, odium and infamy upon the house as being a place of ill fame, so that it was no longer reputable for moral or decent persons to dwell or enter there ; that all these practices were by the procurement or permission and concurrence of the plaintiff. That the defendant, being a person of good and respectable character, was compelled by the repetition of these practices to leave the house, and did leave it for that cause, about the beginning of March, 1820 ; and did not return. That a respectable man by the name of Fox, to whom part of the house had been under-let, left it for the same cause.

This evidence was objected to, and overruled by the Judge as inadmissible upon the issue ; and the defendant's counsel excepted. Verdict for the plaintiff, damages $362 52.

*H. W. Warner*, for the defendant, moved for a new trial, and cited *Hunt* v. *Cope*, (Cowp. 242.) That an eviction is a good defence, he said, there is no doubt. The evidence offered should have gone to the jury, who would have been authorized to presume an eviction. If the conduct of the lessor be such as to make it improper, inconvenient or useless for the tenant to remain in possession, this is equivalent to an eviction.

*J. A. Dunlap*, contra, said the evidence offered was no defence to the action ; and if otherwise, it was inadmissible under the plea.

In support of the first point, he cited 3 Cruise's Dig. 348, tit. *Rents*, ch. 3 ; Co. Litt. 148, *b.* ; Ld. Raym. 369 ; Cro. Eliz. 341 ; Cro. Jac. 425 ; 3 John. Rep. 48 ; T. Jones, 148 ; 1 T. R. 671 ; 7 John. Rep. 376 ; 13 id. 105 ; Esp. Ev. 142.

To the second point, 1 Phil. Ev. 153 ; Esp. Ev. 131 ; 2 Lev. 143 ; Hob. 326.

*Curia*, per SUTHERLAND, J. *Eviction* of the whole, or any part of the demised premises, is a good plea in bar to an action either of debt or covenant for the rent. In this, all the authorities agree. (Cruise, Dig. tit. 28, *Rents*, ch. 3. Woodfall, 412–13. 1 Saund. 204, n. (2) and cases there

*Margin notes:*

UTICA,
Aug. 1825.

Pendleton
v.
Dyett.

cited.) The plea in this case is unexceptionable in point of form. It is according to the established precedents. (*Salmon* v. *Smith*, 1 Saund. 203, 4, n. (2). It states that the plaintiff, (who was the defendant's lessor,) entered into and upon the demised premises, and ejected, expelled, put out and amoved the said defendant from the possession thereof, and kept and continued him so ejected, expelled, &c. from thence hitherto. The only question in the case, is, whether the evidence offered by the defendant, and which was rejected by the Judge who tried the cause, supported the plea, or was of a character which ought to have been submitted to the jury, for them to decide whether it made out the fact of eviction or not. No actual ouster or turning out of possession is pretended. The proof offered does not show an entry by the lessor upon the premises. It does not make out even a trespass. The acts complained of as amounting to an eviction, were committed in a different part of the same house, with which the demised premises had no connection, except that the approach to each was by a common entrance. They operated not upon the physical safety of the tenant, or the physical condition of the demised premises; but upon the moral sense and feeling of the defendant. The acts were exceptionable in themselves; and, if they could not be abated, the defendant had not only a moral right, but it was his moral duty, to abandon the scene of riot and prostitution. But they could have been abated. The law afforded a prompt and sufficient remedy. The police of the city, upon the complaint of the defendant, would have instantly taken the plaintiff and his associates into custody, and punished them by fine and imprisonment, as often as the offence was repeated. There was no moral necessity, therefore for abandoning the premises. Suppose the plaintiff had been in the habit of exhibiting himself either in the common passage or in the street opposite the premises in question, in indecent attitudes, or in a state of offensive nakedness, so that the defendant and his family could not leave his house without witnessing the disgusting exhibition; would this cause have supported a plea of eviction? They would both stand upon the footing of nui-

sances, which the plaintiff or any other citizen might cause to be abated. But if, instead of taking that course, he should abandon his house, it must be considered a voluntary and not a compulsory act.

But I apprehend there can be *no eviction*, without an *actual entry*. Such is the form of the plea, and the proof must sustain it. The very definition of the term eviction, is an *expulsion of* the lessee out of all or some part of the demised premises ; and Sergeant Williams says, that to occasion a suspension of the rent, the plea must state an eviction or expulsion of the lessee by the lessor, and a keeping him out of possession, until after the rent became due; otherwise it will be bad. (1 Saund. 204, n. (2.) If a constructive expulsion, without entry, may constitute an eviction, which will operate as a suspension of the rent, why is the averment of an entry contained in all the precedents, and why do all the cases agree, that without such averment the plea would be bad ? Thus, in *Timbrell* v. *Bullock*, (Styles, 446,) it is said that, to make a suspension of rent reserved upon a lease for years, *the lessor must oust the lessee* of part of the thing let, at least, and hold him out until after the day on which the rent is made payable by the lease ; and if the lessee *re-enters* the rent is revived. A re-entry presupposes an actual ouster or expulsion. So in *Page* v. *Parr*, (Styles, 432,) which was an action of covenant for rent, the defendant pleaded in bar, that the plaintiff entered into a part of the land demised, before the rent became due, and so had suspended his rent. The plaintiff replied that the defendant re-entered and so was possessed as in his former estate. To which replication there was a demurrer. And Rolle, Ch. J. held the demurrer well taken, on the ground that the replication did not state that the defendant, after re-entry, continued in possession until the rents were due ; and judgment was given for the defendant. According to the case of *Salmon* v. *Smith*, (1 Saund. 204, and note (2),) the plea would now be held bad for omitting to state that the defendant was kept out of possession until the rent became due. But this case also clearly contemplates an actual entry or ouster by the lessor, as necessary

Pendleton
v.
Dyett

in order to suspend the rent. So in *Reynolds* v. *Buc'ke*, (Hob. 326,) which was an action of debt for rent, the defendant pleaded that before rent due, the plaintiff *entered upon him;* but did not say that *he did expel him or hold him out;* and the plea, on that ground, was declared to be of itself an insufficient bar. But in that case it was cured by the verdict. *Bushell* v. *Lechmore,* (1 Lord Ray. 369,) also decides that a mere entry or trespass without an eviction will not suspend the rent. Upon this point all the cases concur. *Hunt* v. *Cope,* (1 Cowp. 242,) is a strong case. There the defendant pleaded that the lessor, with force and arms, entered upon the demised premises and demolished a summer house, (being a part of the premises,) by means whereof the tenant had been *deprived of the use* of the summer house, &c.' This plea was held to be bad, because it did not aver an actual *eviction or expulsion of the lessee.* The defendant's counsel urged that the facts in the plea amounted to an eviction, on the ground that *an actual entry* was stated, and a destruction of a portion of the premises; and if an eviction could be constructively pleaded, this would seem to be good. But all the Court held it bad, and Aston, J. says, all the cases in the books suppose *the lessee to be put out of possession.* Therefore, merely saying that he was deprived of the enjoyment of the premises is not sufficient. If it is necessary to state, in terms, that the lessee was turned out of possession, in order to make a good plea of eviction, it would seem to follow that the proof in support of the plea must be substantially of the same character. Lord Mansfield, in *Hunt* v. *Cope,* says that the facts there stated, might have been sufficient for the jury to have found for the defendant under a good plea of eviction. But there, it will be recollected, *an actual entry, and a physical destruction of a portion of the premises* are averred; and if an actual ouster can be inferred from circumstances, it surely might in that case; yet Lord Mansfield considers it as matter of doubt.

In the case before us, there was not only no actual entry, but no assertion, either express or implied, of a right of entry on the part of the lessor, or of any other right or control over the demised premises    The disturbance

suffered by the lessee was the consequence of conduct on the part of the lessor, which partook of the nature of a nuisance, and which he had the power of abating at pleasure. He was not, therefore, constrained by any necessity, either moral or physical, to abandon the premises; and, in judgment of law, so far as this action is concerned, his abandonment must be considered voluntary. The evidence offered was properly rejected by the Judge. The motion for a new trial must be denied.