## NEW-YORK COMMON PLEAS.

### EDGERTON agt. PAGE.

It is well-settled law, in this state, that there must be an *entry* and *expulsion* of the tenant by the landlord, *or* some *deliberate disturbance* of the possession, depriving him of the beneficial enjoyment of the demised premises, to operate as a *suspension* or *extinguishment* of the *rent.*

That a tenant has power to prevent, or can prevent the disturbance of his possession, does not, in the absence of any obligation to do so, destroy the legal effect of an *eviction.*

It is the duty of a landlord, who creates a *nuisance* or *disturbance*, to the tenant, to abate the one, or arrest or remove the other.

Where the landlord occupied the upper part of the premises, and his tenant the lower part; and it appeared that, for a period of three months previous to the 1st May, 1855, the landlord, with a full knowledge that the waste water-pipes on his portion of the premises were out of order, and by their use waste water and other filth flowed through them, and leaked down upon the tenant, injuring his property, and depriving him in a great measure of the beneficial enjoyment of his premises; and after repeated requests from the tenant to repair the pipes or desist from using them—*held*, that these facts were sufficient to sustain the defence of *eviction.*

The tenant was not obliged to *abandon* the premises, to make the interruption of his possession available as a defence. Such interruption continued during the whole of the quarter, and *suspended* the rent while it continued.

*Special Term, Jan., 1856.*

THIS action was commenced to recover one quarter's rent of the first floor of the premises, No. 8 Fulton-street, ending 1st of May, 1855, under a hiring for one year from 1st May, 1854,

with the privilege of one year more. The answer sets out the agreement of renting, and alleges—

That the renewal provided for in the lease was the main inducement to the taking of the lease, and principal cause of its value.

That between 1st day of February, 1855, and 1st May, 1855, the plaintiff was the occupant of the entire upper part of the premises in question, and also of premises No. 10 Fulton-street.

That between those days the plaintiff negligently and wantonly suffered a waste-pipe, or pipes which were used to carry off waste water from the upper part of premises No. 8 and No. 10 Fulton-street, and attached thereto, and which extended down along the rear of those premises and communicated with the sewer, to get out of order and become unfit for the purpose for which they were intended. And further, that in consequence thereof, waste water and other filth flowed through the pipes, and leaked and escaped therefrom into and upon the ceiling, floor and other parts of the demised premises, interfering with, and depriving the defendant in a great degree of the substantial and beneficial enjoyment of the premises, and injuring and destroying the property of the defendant.

That the plaintiff knew of the condition of the pipes, and the injury to the defendant, as stated, and could have prevented it by ordinary care and vigilance on his part.

That, although requested at divers times, commencing with the 1st of February, 1855, and ending with the 1st of May, 1855, to repair the waste pipes, or abstain from the use of them, he did neither.

That, in consequence of these occurrences, the defendant was obliged to abandon the demised premises, and was deprived of the privilege to renew his term, of which he intended to have availed himself.

That the plaintiff and his servants negligently and wantonly poured and threw water, filthy and otherwise, at divers times during the period last mentioned, from the premises occupied

by him, so that the same ran into and upon the premises of the defendant, and injured his property.

That, under the circumstances, the defendant denies that he occupied the demised premises, or is indebted for rent, as alleged in the complaint, or that the plaintiff is entitled to any judgment against him.

The defendant then insists that these matters amount, in law, to an eviction, and are a bar to the plaintiff's recovery. But, if not allowed as such, alleges that he will recoup the damages sustained, or claim the benefit thereof, in some way to be held by the court.

The plaintiff demurs to the answer on several grounds stated in detail, but to the defence of eviction for the following reasons :—

*First.* That the facts do not constitute an eviction.

*Secondly.* That the interference or disturbance is not tantamount to an eviction *before the tenant leaves the premises.* He cannot be evicted and still occupy ; and,

*Thirdly.* Because the defendant did not leave the demised premises until after the expiration of the term, and until the rent had fallen due by the terms of the contract.

BRITTON & ELY, *for plaintiff.*
JOHN GRAHAM, *for defendant.*

BRADY, Judge. It was conceded on the argument that by the well-settled law of this state, there must be an entry and expulsion of the tenant by the landlord, or some deliberate disturbance of the possession, depriving him of the beneficial enjoyment of the demised premises, to operate as a suspension or extinguishment of the rent. (*Dyett* agt. *Pendleton*, 8 *Cow.* 727 ; *Ogilvie* agt. *Hill*, 5 *Hill*, 52 ; *Cohen* agt. *Dupont*, 1 *Sand. S. C. R.* 260.) And Chief Justice NELSON, in *Ogilvie* agt. *Hill, supra,* says that, " No general principle is better settled, or more uniformly adhered to."

It was insisted, however, by the counsel for the plaintiff, that even if the facts were held sufficient to create an eviction, yet,

Edgerton agt. Page.

as the defendant did not abandon the premises before the rent became due, the eviction was not complete. That this and kindred cases involved an election by the tenant, to be signified by quitting the premises, and that he could not be evicted and still occupy, as the defendant in this case had done.

I think it would be difficult to present a stronger case than that of the defendant. For a period of three months, with full knowledge of the condition of the pipes, and of the injury to the defendant's property, and although often requested to abate the wrong, the plaintiff permitted the water to flow on, utterly regardless of his duty as a landlord, and of the rights of his tenant. The pipes were used for his benefit, and the injury and disturbance which their condition caused and created could have been obviated, either by repairing them or abstaining from their use.

In the case of *Cohen* agt. *Dupont, supra,* the tenant was subjected to petty annoyances by the landlord and his family, not directly affecting the *apartments* of the tenant, but the access thereto, and the enjoyment thereof. The principal facts, however, were, that the tenant, being a dentist, had numerous calls upon him for professional aid; and that the plaintiff's family, by muffling the bell, compelled the visitors of the tenant to remain at the door from fifteen to twenty minutes without effecting an entrance. And it was insisted, that this, if persisted in, would seriously impair, if not destroy, the tenant's business. The plaintiff did not regard the remonstrances of the tenant against these acts, and the jury decided that the acts complained of were an eviction. The court concurred in that conclusion, and it was certainly correct.

It will be perceived that the acts charged upon the landlord, in that case, affected the enjoyment of the premises remotely, the only disturbance being in the access thereto, and not within them, involving no loss of property, but a probable injury if continued. In this case, the disturbance goes to the entire demise, and is attended by the destruction, not of the business profits, but the property of the defendant.

It was urged, on the argument, that it was reasonable to as-

sume, from all the facts divulged, that the pipes were used in common between the parties; and that, there being no covenant to repair on the part of the plaintiff, it was the duty of the tenant to protect himself. No precedent, it is believed, can be found for assuming any fact by inference or implication, to sustain a demurrer, more especially if that assumption would conflict with the facts admitted by the demurrer itself. In addition to that, however, and as a further answer, the disturbance is alleged to have resulted from pipes used by the plaintiff on his part of the premises, over which he had control, but which control he neglected to exercise. The defendant had not covenanted to repair; and if he had, his covenant would extend only to his demise, of which the pipes formed no part.

That a tenant has power to prevent, or can prevent, the disturbance of his possession, does not, in the absence of any obligation to do so, destroy the legal effect of an eviction. The doctrine of self-protection in that respect, as it may be styled, was announced by Justice SUTHERLAND, in *Dyett* agt. *Pendleton*, (4 *Cow.* 581,) but the court of errors, when that case was decided there, rejected the doctrine, and, as I understand it, for the plain and obvious reason, that it is the duty of a landlord, who creates a nuisance or disturbance, to abate the one or arrest or remove the other.

Having thus determined that the facts alleged in the answer are sufficient to sustain the defence of eviction, it is only necessary to consider the effect of the defendant's continuing in possession until the rent became due.

Prior to the decision in the case of *Dyett* agt. *Pendleton*, an entry by the landlord, and expulsion of the tenant, was considered necessary to constitute an eviction; and the case of *Bennett* agt. *Bittle and another*, (4 *Rawle*, 339,) is regarded as a leading authority on that subject. I do not understand that case, although decided subsequently to *Dyett* agt. *Pendleton*, as recognizing the doctrine of eviction by the disturbance of the tenant in his possession. However that may be, the effect of an eviction by entry and expulsion, and of a constructive eviction, occasioned by the disturbance of the possession of the

tenant, required by the rule, are different. In the former the rent is extinguished absolutely at once, and in the latter it ,is suspended only during the continuance of such disturbance, unless the tenant. abandons the premises therefor. It is true, that the eviction, in either case, must take place before the rent becomes due. (*Whitney* agt. *M'Keon*, 3 *Denio*, 452.) But when it results from disturbance, as long as that disturbance continues the rent is *suspended*, and not extinguished, unless continued over a whole period for which rent would accrue under the lease, or unless the tenant abandon as above stated. The defendant was not, therefore, obliged to abandon the premises, to make the interruption of his possession available as a defence. Such interruption continued during the whole of the quarter, and suspended the rent while it continued.

I deem it unnecessary to discuss the other questions presented upon the right of the defendant to recoup, or in any way interpose his damages in this action, resulting from the acts complained of, regarding those acts as trespasses merely; although I have little doubt that the rule applicable is stated by Judge WOODRUFF in *Levy* agt. *Bond*, (1st *Smith*, *C. P. Rep.* 173,) and in *Drake* agt. *Cockcroft*, (10 *How. Pr. Rep.* 382.)

As the defence, however, is one which should be passed upon by trial, the judgment will be for the defendant, with liberty to the plaintiff to withdraw the demurrer, and to reply, ·if necessary, within twenty days, on payment of the cost of the issue of law.