## THEODORE T. EDGERTON *v.* ROBERT W. PAGE.

E. leased certain premises to P. for one year, with the privilege of a year's renewal at the same rent. In an action for the last quarter's rent of the first year, P. alleged, as a defence, that the plaintiff had maliciously and wantonly allowed large quantities of waste water to come down into the demised premises, greatly injuring his goods and compelling him to leave the premises at the end of the first year, thereby losing the privilege of renewal. The defendant having remained in possession of the premises during the entire year: *held*, on demurrer to answer, that these facts constituted no defence.

I. They did not amount to an eviction. Every obstruction by the landlord to the beneficial enjoyment of the premises demised does not constitute an eviction. To constitute an eviction, the lessee must have been compelled to abandon the whole or some part of the premises by the wrongful act of the lessor.

II. Nor did they constitute a ground for a counter-claim or recoupment. Every act of the landlord, disturbing the tenant's beneficial enjoyment of the demised premises, does not constitute the basis of a counter-claim or recoupment in an action for rent, but only such acts as amount to an eviction, total or partial, or an unlawful injury to the premises in violation of the contract of letting.

III. They show merely a disturbance of the beneficial enjoyment of the tenant, but no interference with his possession.

IV. trespass of the nature alleged, not made under an assumption of title, is no breach of the contract of letting—is not a cause of action arising out of the contract, upon which the landlord's claim is founded—and therefore cannot be said to be connected with the subject of the action.

A covenant for quiet enjoyment, expressed or implied in a lease, relates only to title, and not to the undisturbed enjoyment of the premises demised, when there has been no eviction or entry under assumption of title.

*Per* BRADY, J., *dissenting :*—A tenant has a right to abandon the demised premises at any time during the landlord's continuance of the disturbance of his beneficial enjoyment of the premises. If the disturbance cease before the rent becomes due and while the tenant is still in occupation, the rent may be recovered. If the disturbance continue during the whole period of that part of a term during which rent accrues, and down to the time when the rent becomes due by the agreement, and the tenant then abandons the premises in consequence of such disturbance, the rent cannot be recovered.

APPEAL by plaintiff from an order at special term, overruling a demurrer to answer. This action was brought to recover rent. The plaintiff leased to the defendant the first floor of No. 8 Fulton street, New York city, at a yearly rent of $1,500, for one

year from the 1st of May, 1854, with the privilege of one year's renewal at the same rate. . This action was brought to recover the rent due for the quarter ending 1st May, 1855.

The answer alleged that the privilege of renewal contained in the lease was one of the main inducements to defendant to take the lease, and one of the principal causes of its value ; that the plaintiff occupied the entire upper part of the building No. 8, and also of the adjoining one, No. 10 ; and that, during the quarter for the rent of which this action was brought, he wantonly, maliciously and negligently permitted a certain waste-pipe, coming down through the rear of the building No. 8 Fulton street, and communicating with a sewer underneath, which waste-pipe was used for the purpose of carrying off the waste water from the upper stories of the buildings Nos. 8 and 10 Fulton street, the premises occupied by the plaintiff, to get out of order and leak, so that large quantities of the waste water and other filth flowed down through the ceiling and upon the floor of the demised premises, interfering with and depriving the defendant, in a great degree, of the beneficial enjoyment thereof, and injuring and destroying the property of the defendant ; that the plaintiff knew these facts at the time, and might, by the exercise of ordinary care, have prevented the injury, but, though requested to repair the pipes, refused to do so ; and that, in consequence of the injuries to the defendant's business, occasioned thereby, he was compelled to abandon the premises about the first of May, and was thus wholly deprived of the privilege of renewal created by the lease. These facts, he claimed, amounted to an eviction, and he also claimed to recoup or set off the damages suffered, against the rent claimed, and claimed an affirmative judgment therefor.

The plaintiff demurred to this answer. The demurrer was overruled, and the plaintiff appealed.

*Britton and Ely*, for the appellant.

I. There is no allegation which shows that the evil complained of occurred from any fault of plaintiff; for,

1. There is no covenant to repair contained in the lease set forth in the answer.

2. In the absence of such express covenant, there is none implied. Taylor L. & T., 327, 343.

3. Nothing appears but that the evil complained of resulted from the improper condition of the pipes upon the defendant's premises, and used by him, as there is no allegation that these pipes were *exclusively* used for account of the premises above, nor does it appear but that it actually existed when the quarter commenced, and in fact when the lease was taken; and suffering it to be so would be no eviction, nor would it constitute any cause of action. *Speckels* v. *Sax*, 1 E. D. Smith, 253; see *Etheridge* v. *Osborn*, 12 Wend. 529.

II. Defendant cannot claim a reduction of the rent for any tortious act of the landlord, by which defendant was disturbed while in possession of the demised premises; for,

1. These damages do not arise out of the contract between the parties, and the acts complained of are as independent of the covenants between them as any trespass or other act of force committed by a stranger upon the tenant. *Cram* v. *Dresser*, 2 Sand. S. C. R. 120, 127; *Levy* v. *Bend*, 1 E. D. Smith, 169; *Drake* v. *Cockcroft*, 10 Howard's Prac. 377; *Mayor, &c., of New York* v. *Mabie*, 2 Duer, 401.

2. Damages for a wilful trespass cannot be the subject of set-off, nor can damages for a trespass, not constituting a breach of contract declared on, be recouped, and the counter-claim under the Code includes only what might thus have been set up under the old system. See same cases as above.

3. There is no breach of the contract declared on, as in the absence of *express covenants* there is no covenant whatever implied, not even for quiet enjoyment. The word "demise" may imply a covenant for quiet enjoyment (see v. *Adams* v. *Gibney*, 6 Bingham, 656; 4 M. & P. 491; 1 Woodfall's Tenants' Law, 311); but a mere relation of landlord and tenant creates no such covenant. *Granger* v. *Collins*, 6 Meeson & Welsby, 458; *Mayor, &c., of New York* v. *Mabie*, 2 Duer, 401.

Edgerton v. Page.

"Let" is not equivalent to "demise." *Messeat* v. *Reynolds*, 3 Man. Gran. & Scott, 194.

4. If, however, there is such an implied covenant, a covenant for quiet enjoyment is, at most, only a warranty of title in the lessor, and that the tenant shall enjoy such *title* undisturbed (see Woodfall's Tenants' Law, 318), and is not broken by a trespass, but by an eviction only; or by an entry under an assumption of title. *Holden* v. *Taylor*, Hobart, 12; *Levi* v. *Stephenson*, 5 Bing. N. C. 183; Woodfall's Tenants' Law, 412; *Waldron* v. *McCarty*, 3 John. 472; *Kertz* v. *Carpenter*, 5 ibid. 121; *Etheridge* v. *Osborn*, 12 Wend. 529; *Watt* v. *Coffin*, 11 John. 495; *Levy* v. *Bend*, 1 E. D. Smith, 169; *Drake* v. *Cockcroft*, 10 How. 377.

III. There are no facts alleged constituting an eviction, nor any assumption of title by the landlord; but, on the contrary, the complaint shows there was no eviction; for,

1. It is admitted that if a tenant is evicted by the landlord from any part of the demised premises, the obligation under the lease to pay rent ceases; and though the tenant occupies the residue of the premises, yet he incurs no liability for rent therefor under such agreement, as the eviction debars the recovery of any rent under said agreement, until the possession of the whole is restored. *Smith* v. *Raleigh*, 4 Campb. 513; *Lewis* v. *Payne*, 3, 4 Wend. 423; *Zule* v. *Zule*, 24 ibid. 76; *Lawrence* v. *French*, 4 25 ibid. 453; *Dyett* v. *Pendleton*, 8 Cowen, 731; *Hegeman* v. *McArthur*, 1 E. D. Smith, 147; *Christopher* v. *Austin*, 1 Kernan, 216; Taylor L. & T. 183, 184.

2. It is admitted that an expulsion or physical eviction is not necessary to constitute an eviction; it is enough that there is an interference by the landlord with or a disturbance of the tenant's beneficial enjoyment or use of the demised premises, intentionally committed and injurious in its character. *Salmon* v. *Smith*, 1 Saund. 204; *Hunt* v. *Cope*, 1 Cowp. 242; *Pendleton* v. *Dyett*, 4 Cowen, 581; *Dyett* v. *Pendleton*, 8 ibid. 727; *Ogilvie* v. *Hull*, 5 Hill, 52; *Cohen* v. *Dupont*, 1 Sand. S. C. R. 260; Taylor's L. & T. 443.

3. But such interference or disturbance is not tantamount to

an eviction before the tenant leaves the premises. The tenant cannot be evicted and still occupy; it involves an absurdity and a contradiction in terms. The true doctrine is simply this: When there is an actual expulsion from the premises or from any portion thereof, or such an interference with the beneficial enjoyment as to justify the departure of the tenant, and he abandons the premises before the expiration of his term, there is an eviction; but when there is simply an intrusion upon the premises, or a destruction of property thereon, or an injury to the enjoyment, the tenant still occupying the whole, there is only a trespass. Cases above cited; *Cram* v. *Dresser*, 2 Sand. S. C. R. 120; *Campbell* v. *Shields*, 11 How. 565; 3 Kent's Com. 463, 4th ed., note; *Gilhooly* v. *Washington*, 4 Comst. 217.

4. The defendant did not, in this case, leave until after the expiration of the term; and, by the terms of the contract, the rent had fallen due, and leaving at such a time could constitute no bar for the rent for that term. *McCarty* v. *Hudson*, 24 Wend. 293; *Cohen* v. *Dupont*, 1 Sand. S. C. R. 264.

IV. Nor could any damage be claimed or recouped for breach of covenant of renewal, for there is no allegation of refusal to renew. See *Etheridge* v. *Osborn*, 12 Wend. 529.

*John Graham*, for the respondent.

DALY, J.—The matters set up by the answer are relied upon, either as a bar to the action, or as establishing a claim for damages against the plaintiff, which may be set up in this action by way of counter-claim.

It is not denied by the answer—indeed, the answer admits—that the defendant continued to occupy during the whole period for which rent is claimed, and the first question presented is, whether a tenant, who thus continues in the occupation of the whole of the premises demised, is released from the payment of rent because the landlord has committed acts which have diminished the beneficial enjoyment of the premises during the period for which rent is sought to be recovered.

Edgerton v. Page.

To occasion a suspension or extinguishment of rent, there must be an eviction of the tenant, and, as this was understood before the decision of *Dyett* v. *Pendleton* (8 Cow. 727), it meant that the tenant must be *put out of possession* either of part or of the whole of the premises demised. Co. Lit. 148, *b; Dorrel* v. *Andrews*, Hob. 190, *a; Reynolds* v. *Buckle*, ibid. 326, *a; Hodgson* v. *Robson*, Vent. 276; Pollexf. 142; *Trumbull* v. *Bullock*, Styles, 446; *Salmon* v. *Smith*, 1 Wm. Saund. 204, and note 2; *Hunt* v. *Cope*, Cowp. 243. Thus the form of the plea, as given in Saunders, was, "and *expelled*, and removed him, the said Samuel, from his possession thereof, and *kept out* him, the said Samuel, from his possession thereof." This was the form of the plea in *Dyett* v. *Pendleton* (4 Cow. 584); and as some misconception has prevailed, as to what was actually determined in the ultimate disposition of that case by the Court of Errors, it may be well to review that decision.

To maintain the plea that the plaintiff had expelled him from the possession, the defendant offered to prove, upon the trial, that the plaintiff introduced, into the part of the house which he occupied, lewd women and prostitutes at various times, keeping them all night for the purpose of prostitution; that he was in the habit of introducing other men, who, with himself, kept company with the women, and who together kept up such noise and disturbance throughout the night, using obscene and indecent language, so as to disturb the rest of persons sleeping in the part of the house demised to the defendant, in consequence of which the defendant was compelled to leave the house before the rent became due for which the action was brought. It was held by the Supreme Court (4 Cow. 584), that the evidence was properly excluded; that there could be no eviction without an *actual entry* and expulsion; that the matter complained of simply amounted to a nuisance, which the defendant could have abated by applying to the police; that he was under no necessity, physical or moral, to abandon the premises; and that his abandonment was voluntary, and was no answer to the covenant for the payment of rent.

The decision of the Supreme Court was reversed by the Court of Errors (8 Cow. 729), and that judgment of reversal determined merely that proof of an *actual entry* was not essential to establish an eviction, but that, without an actual entry upon the premises, the landlord might be guilty of acts which, by compelling the tenant to quit the premises, would amount to an eviction, and that, upon the evidence excluded at the trial, the jury could have found that the defendant was justified in quitting the premises, and having done so, that he was released thereafter from any further liability under the covenant in the lease for the payment of rent.

This is all that I understand to have been decided by that case, though it has been supposed to have gone much further. Thus Savage, C. J., in *Lewis* v. *Payne* (4 Wend. 428), said, "In *Dyett* v *Pendleton*, it seems to have been held that *any obstruction*, by the landlord, to the beneficial enjoyment of the demised premises, or a diminution of the consideration of the contract, by the act of the landlord, amounts to a constructive eviction." The only foundation for this opinion is to be found in one of the reasons assigned by Senator Spencer, who delivered an opinion for reversal, to show that actual entry was not essential to an eviction.

In referring to the rule, that a tenant, who has been evicted from part of the premises by the act of the landlord, is not obliged to pay rent for the part he retains until he is restored to the whole possession, Senator Spencer says, "As to the part retained, this is deemed such an injury to its beneficial enjoyment, such a diminution of the consideration upon which the contract is founded, that the law refuses its aid to coerce the payment of any rent. Here, then, is a case where actual entry and physical eviction are not necessary to exonerate the tenant from the payment of rent; and if the principle be correct as applied to a part of the premises, why should not the same principle equally apply to the whole property demised, where there has been an obstruction to its beneficial enjoyment, and a diminution of the consideration of the contract, by the acts of the landlord, although those acts do not amount to a physical eviction."

But the ground here taken, that any obstruction by the landlord to the beneficial enjoyment of the premises demised, or diminution of the consideration of the contract, amounts to an eviction, was not essential to the decision of *Dyett* v. *Pendleton*. It is not, and never was the law, nor is the case an authority for any such proposition or principle. If any obstruction to the beneficial enjoyment, or diminution of the consideration of the contract, will exonerate the tenant from the payment of rent, then any act of trespass on the part of the landlord will have that effect; and it is well settled that something more than a mere trespass is essential to an eviction, however much the act of trespass, or successive acts of trespass, may obstruct the tenant in the beneficial enjoyment, or diminish the consideration of the contract.

"The title to rent," says Bacon (6 Bac. Abr., Rent, L. 44), "is founded upon this, that the land demised is enjoyed by the tenant during the term included in the contract, for the tenant can make no return for a thing he has not. If, therefore, the tenant be deprived of the thing letten, the obligation to pay the rent ceases." But it was held before Bacon's time (Hawson's case, Clayton, 34; 18 Vin. Abr., 504, tit. Rent [A. a], pl. 11; *Bushell* v. *Lechmore*, 1 Ld. Ray. 369), and uniformly adhered to since, that a mere entry and trespass upon the land by the landlord is not such a deprivation, and will not suspend or discharge the payment of rent. In the first of these cases (Hawson's case), the court held that the breaking of a partition wall by the landlord will not extinguish the rent, for there · must be a continuance of the possession and a putting out of the lessee. In *Vermilyea* v. *Austin* (2 E. D. Smith, 203), I had occasion to point out that Senator Spencer had mistaken the reason of the rule, that eviction from part, by the act of the landlord, shall suspend the rent of the whole. It is not founded upon the diminution of the consideration of the contract, or the injury to the beneficial enjoyment; and this mistake led to the erroneous conclusion he arrived at. This rule, in respect to the soundness of which there was great contrariety of opinion before it was definitely settled and recog-

nized (6 Bac. Abr. M 2), was founded upon the policy of the feudal law, by which the landlord was bound to protect and defend his tenant; and such being the obligation springing out of the relation, the landlord, who had wrongfully dispossessed the tenant of part, would not be allowed to *apportion* his own wrong, and recover rent *pro rata* for the residue of the land, but the rent was suspended until the landlord fulfilled his obligation, and restored the tenant to the possession of the whole. Co. Lit. 1, 486; *Hodgkin* v. *Robson*, Vent. 276; Pollexf. 142; Brooke Abr. tit. Extinguishment, 48; Roll. Abr. 938; 6 Bac. Abr. Rent, M 1, p. 49.

In *Dyett* v. *Pendleton*, the tenant abandoned the premises before the rent became payable, and all that was or can be said to be decided by the case was, that to constitute an eviction it was not necessary that the landlord should actually enter and expel the tenant from the possession, but that he might be guilty of acts which, by compelling the tenant to abandon the premises, would have the same effect as if there had been an actual entry and a physical expulsion. In other words, that there might be constructive as well as mere physical eviction, which was very well illustrated by Senator Spencer, by supposing that the landlord in that case had converted the portion of the house which he occupied into a small-pox or yellow-fever hospital, or had made a deposit of gunpowder under the tenant, in which case the abandonment of the premises by the tenant might become a matter of necessity, and his expulsion accomplished as effectually as if the landlord had entered and turned him out by force. "Whether," says Crary, the other senator, who delivered an opinion in favor of reversing the judgment of the Supreme Court, "it was an unnecessary and voluntary abandonment of the premises on the part of the tenant, or compelled by the moral turpitude of the landlord, is the only question material to be considered." In *Jackson* v. *Eddy and others* (12 Miss. 209), a case in many respects resembling the present one, and to which I shall have further occasion to refer, it became essential to ascertain exactly what was determined by *Dyett* v. *Pendleton*, and the principle or rule established by that case is thus stated:

" Any act of the lessor, which defeats the enjoyment of the property by the lessee, is a good bar to the demand for rent, *provided the lessee abandon the premises in consequence of such wrongful act of the lessor.*"

The Court of Errors, in establishing this doctrine of constructive eviction, made no change in the law. They overturned no principle or rule established by previous decisions, but merely extended the application of an acknowledged principle, in a case which justified the extent to which they carried it. This was the view taken of the case by Nelson, J., in *Ogilvie* v. *Hull* (5 Hill, 54), and by Bronson, J., in *Gilhooly* v. *Washington* (4 Com. 219). It was entirely consistent with the existing law, to hold that a landlord, who compelled a tenant to abandon the premises demised, by acts which rendered the further occupation of them impossible, inconvenient, or useless, evicted the tenant as fully, to all intents and purposes, as if he had gone upon the premises and ejected him from the possession by force.

In *Cohen* v. *Dupont* (1 Sand. S. C. 260), the tenant left in consequence of a series of petty annoyances on the part of the landlord, which seriously injured the tenant's business, and it was held to be an eviction. In *Jackson* v. *Eddy, supra*, the tenant occupied the store and cellar of a building, the upper part of which was occupied by the landlord as a grocery store, and the dripping from the salt, tar, &c., in the loft, or floor occupied by the landlord, passed through the floor into the store occupied by the tenant, upon his sugar hogsheads, brooms, &c. The tenant complained, and the landlord tried to prevent further injury by sprinkling sawdust on the floor above, which only stopped the leakage temporarily. The tenant left before the commencement of the last quarter, and sent the key to the landlord, who refused to receive it. The action was for the last quarter's rent, and it was held that the tenant having abandoned the premises before the beginning of the quarter for which rent was claimed, in consequence of a disturbance of the beneficial enjoyment by the act of the landlord, the action could not be maintained, and the law upon the subject is thus succinctly stated by the court: " The

consideration of the lessee's undertaking to pay rent is the quiet, peaceable, and indisputable possession of the premises leased, and is, in its nature, a condition precedent to the payment of rent. If the lessor, by any wrongful act, disturbs that possession, which he should protect and defend, he thereby forfeits his right, and the lessee may abandon the possession of the premises leased, and *thereby* exonerate himself from liability to pay rent."

In all these cases the tenant abandoned the premises, and thereby discharged himself from all further liability for rent, but no case has ever gone the length of holding that a tenant, disturbed in the beneficial enjoyment by the act of the landlord, may continue in the possession of the whole premises, and be exempt from the payment of rent. There must be an eviction of the whole or of some part, and there can be no eviction, if the tenant continues in the possession of the whole, however much he may be disturbed in the beneficial enjoyment. For that disturbance, as has been already shown, the landlord is liable as a trespasser, but it does not put an end to the contract. Every eviction includes an ouster either of the whole or of some part. 6 Bac. Abr. by Bayley, note 44; 1 Lord Ray. 369. It must amount to a deprivation of possession. The possession must be given up by the tenant in consequence of the acts of the landlord, and they must be acts which warrant and justify the tenant in so doing, or the landlord must have taken the possession forcibly from the tenant. In short, there must be a change of possession. It must be out of the tenant, and in the landlord.

This is manifest upon referring to the early cases. In *Cibel* v *Hills* (1 Leon. 110; 18 Vin. Abr. Rent, 1, pl. 2, p. 513), it was held that the possession must be in the landlord to suspend the rent. In *Reynolds* v. *Buckle* (Hob. 326, *a*), the defendant pleaded that before rent due " the plaintiff did enter upon him, but did not say that he did expel him or hold him out," and it is said, in the report of the case, that, as a plea in bar, it was insufficient. In *Jones* v. *Boddinger* (Comb. 380), it is said, expulsion makes the first part of the bar, and holding out the rest. In *Arnold* v. *Foot* (3 Keb. 453), the plea was declared bad, because it is not

said *expulit* or *amovit*, nor that the plaintiff continued in possession, as it ought to be, being pleaded by way of suspension, and in *Hunt* v. *Cope* (Cowp. 243), Aston, Justice, said : " All the cases in the books suppose the lessee to be put out of possession; therefore, merely saying that he is deprived of the enjoyment of the premises is not sufficient," and the plea was held no bar. The distinction which runs through all the early cases, that it is the deprivation of the possession of the whole, or of some part, by the wrongful resumption of it, on the part of the landlord, which works the suspension or extinguishment of rent, has been recognized and acted upon in several American cases. *Briggs* v. *Hall*, 4 Leigh, 485; *Jackson* v. *Eddy, supra; Bennett* v. *Bittle*, 4 Rawle, 339; *Cram* v. *Dresser*, 2 Sandf. S. C. 120 ; *Wilson* v. *Smith*, 5 Yerger, 399. In this last case, it is said, " an interference by the landlord, unless the tenant be wholly *evicted and expelled* from the possession, is not a discharge from the payment of the stipulated compensation ; but makes the enterer, upon his possession, a trespasser liable to make satisfaction for the damages in the appropriate action," and it was further remarked, that the relation of tenant continues as long as the tenant continues to hold the possession. Sometimes the distinction between a mere trespass and an eviction is very nice ; as in *Briggs* v. *Hall, supra,* where the landlord entered upon a farm he had demised to the tenant, and mowed the meadow land. This was held to amount to an eviction, because the principal enjoyment and possession of a meadow land is the taking and using the hay, and the man who does this is to every rational purpose the possessor. This was an extreme case for declaring that the possession of part of the premises demised was in the landlord, and not in the tenant, but it shows that this change of possession must take place, or there is no eviction. In the case before us the defendant remained in possession, until the full end of the term, for which rent is claimed. He has not, therefore, been evicted, and his answer is no bar to the action for rent. The acts of which he complains would entitle him to maintain an action against the plaintiff, equivalent to what was formerly denominated an action on the case, and it

only remains to consider whether this cause of action can be set up in this suit, by way of counter-claim.

He claims that he sustained damage to the amount of two hundred and fifty dollars, in the hindrances, obstructions, delay and difficulties occasioned to, in, and about the prosecution of his business, and further sets up, that during the quarter in question large quantities of water were poured and thrown out of the rear windows of the plaintiff, wantonly, maliciously and negligently, by the plaintiff and his servant, so as to run into and upon the premises leased to the defendant, whereby his property there deposited, consisting of fruits and other articles, was injured and destroyed to the amount of one hundred and fifty dollars. Is this a cause of action arising out of the contract, which constitutes the foundation of the plaintiff's claim in this action, or is it connected with the subject of the action within the meaning of the 150th section of the Code?

Before the last amendment of this section, we held, in *Levy* v. *Bend* (1 E. D. Smith, 169), that damages for a tortious intrusion upon the demised premises, by the landlord as a wilful trespasser, not constituting a breach of the contract declared on, could not be set up, by way of recoupment, in an action brought to recover the rent, and after the section was amended in its present form, we held in *Drake* v. *Cockcroft* (4 E. D. Smith, 34), that in an action, by a landlord to recover rent, the tenant could not set up, as a counter-claim, a mere trespass upon the demised premises, and destruction of personal property committed by the landlord. In that action the answer set up that the defendant occupied a stable which constituted a part of the premises demised, and that the plaintiff, during the defendant's temporary absence, broke open the stable, and wilfully took and removed the personal property of the defendant therein, which was injured, destroyed and lost to the defendant. We held, that as a cause of action, this was wholly independent of the contract for the payment of rent. That the trespass for which damages were claimed could not be regarded as connected with the contract nor with the subject of the action, which was money due upon a contract of hir-

_ing;·_ but it was admitted by Judge Woodruff, that an interference with the _possession_, an eviction, total or partial, or an unlawful injury to the premises in violation of the contract of letting, might, under a liberal construction of the Code, constitute a counter-claim.

The answer in this case shows a disturbance of the beneficial enjoyment, but no interference with the possession. Any trespass upon the premises demised is a disturbance of the beneficial enjoyment, but an interference with the possession is either. an entry under color of right or assumption of title, or an absolute deprivation of the possession in whole or in part. The answer does not show an eviction, total or partial, or any unlawful injury to the premises in violation of the contract. There is implied in the contract, being a demise or letting for a year, a covenant for quiet enjoyment (_The Mayor of N. Y._ v. _Mabie_, 3 Kern. 151), but a covenant for quiet enjoyment, whether express or implied, relates only to title, and not to the undisturbed enjoyment of the premises demised where there has been no eviction, or entry under assumption of title. _Howard_ v. _Doolittle_, 3 Duer, 474; _The Mayor of N. Y._ v. _Mabie_, _supra_; _Lloyd_ v. _Tomkins_, 1 T. R. 671; Platt on Covenants, 312 to 320. Nothing of this kind appears by the answer. It sets up a trespass not made under an assumption of title, nor resulting in an eviction, and, therefore, no breach of the contract of hiring. It is not, then, a cause of action arising out of the contract, and as the contract is here the subject of the action, it cannot be said to be connected with the subject of the action.

The judgment of the special term should be reversed, and judgment given for the plaintiff on the demurrer.

INGRAHAM, FIRST JUDGE.—I concur with Judge Daly in the opinion that the matters set up in the answer do not constitute an eviction which either suspends or extinguishes the rent sued for. Down to the period when the rent became due, the defendant remained in full and sole control of the demised premises. The plaintiff neither took possession of any part of the premises,

nor did the defendant abandon them prior to that time. The acts of the plaintiff which are complained of were mere trespasses, for which the defendant could have recovered his damages; but they did not amount to an eviction, nor would they, in my judgment, have authorized an abandonment of the premises. But whether they were sufficient to justify the abandonment or not, the defendant did not leave the premises, and therefore cannot claim to be relieved from the payment of the rent of premises which he had the entire use of during the whole term. The election not to renew a lease, which he had alone the right to determine, cannot be considered as an abandonment of premises so as to cause a suspension of rent which had accrued during the previous term.

The case of *Cohen* v. *Dupont* (1 Sand. S. C. R. 260) does not conflict with these views; because, if the cause of offence there was sufficient, the tenant actually left the premises before the rent became due.

The defendant sets up in his answer facts showing that during the term the plaintiff committed acts injuring his quiet enjoyment of the premises. Upon the argument of this case, I supposed these matters, set up by way of counter-claim, were not within the provisions of the Code on that subject, and were liable to the same objections as were stated in *Levy* v. *Bend* (1 E. D. Smith, 169) and *Drake* v. *Cockcroft* (4 E. D. Smith, 34). I do not see anything, on further examination, to change that opinion. In those cases, we held that a mere trespass by the landlord, which did not deprive the tenant of his possession, was not a breach of the covenant of quiet enjoyment; and that it was necessary, to establish a right to recover for such a cause of action, to show, that the tenant was deprived of some part of the demised premises. In *St. John* v. *Palmer* (5 Hill, 599), Judge Bronson says, "If the covenantee retains the possession, it is impossible that there should have been an eviction, and no action will lie, however hard the case may be.

Judgment at special term should be reversed.

BRADY, J.—I still adhere to the opinion expressed by me on the decision of the demurrer in this action, that the answer sets up facts which are admitted to be true, and which constitute a defence to this action. I also adhere to the opinion that this case is a much stronger one for the application of the doctrine of constructive eviction than *Cohen* v. *Dupont* (1 Sand. 260), stated in the opinion referred to. My understanding of Judge Daly's opinion is, that the defendant not having abandoned the premises during the quarter, he was not evicted constructively or otherwise, and is not discharged. In answer to that view, I state that, by the lease, the defendant was entitled to a renewal of his term, which he abandoned because of the acts set up in the answer; and that if there was no abandonment during the quarter for which the rent is alleged to have accrued, there was an abandonment of the premises for the further term to which the defendant was entitled. I am not aware that any case has yet arisen in the courts, deciding the question directly as to when and under what circumstances the defendant must abandon the premises, to make an eviction perfect; although I think that in this case, as I have already stated, there was in fact an abandonment of the premises. I understand a tenant to abandon premises if he leave them before *his term* expires, or his right to possession ceases, without reference to the precise time when that abandonment takes place. I also understand the abandonment to be perfect when a tenant, having a right to a further term, leaves the premises upon the expiration of the original term, and that the rent accruing cotemporaneously with such abandonment does not change the relative rights and obligations of landlord and tenant, as they existed immediately prior thereto. The law does not regard the fractions of a day. It seems to be conceded, that if the premises are abandoned before the rent becomes due, the eviction would be accomplished without reference to the part or portion which had expired of the period for which the rent is claimed. In the case of *Jackson* v. *Eddy and others*, cited by Judge Daly, the landlord tried to prevent further injury to his tenant from the causes complained of, and did so

temporarily. In this case, the landlord neither did nor attempted to do anything, although often requested; but wantonly, maliciously and negligently permitted the continuance down to the first of May, when the rent became due, of the injurious acts complained of. It presents, therefore, a very different state of facts on the merits. The case referred to is not in point on the question here considered, in my judgment, although it shows an eviction to have resulted from acts of the landlord that were neither wanton nor malicious, and although he essayed to obviate their injurious consequences. Here, however, the plaintiff acted wantonly and maliciously. He knew of the disturbance complained of, and made no effort to remove or prevent it. On the contrary, he wantonly permitted it to continue, and acknowledges not only that he did so, but that the defendant, his tenant, in consequence thereof, was compelled to abandon the premises and lose the benefit of his renewal. The defendant did not abandon the premises during the quarter, but he did during the continuance of the disturbance, which had not ceased, but was still kept up, down to the time of such abandonment, wantonly and maliciously; and hence the conclusion, in my opinion at special term, that the rent in cases like the present is suspended only during the continuance of the acts complained of, unless the tenant abandon the premises whilst they continue and *before* the rent accrues, in which case they become a bar. It follows, from this, that if the disturbance cease before the rent becomes due and while the tenant is still in occupation, the rent may be recovered; and, with equal propriety, that if the disturbance continue during the whole period of a part of the term during which rent accrues and down to the time the rent becomes due by the agreement, the rent cannot be recovered, inasmuch as his right to abandon continues down to the very moment he does so, and more especially, as in this case, where he abandons the premises and a term thereof.

For these reasons, I think the judgment at special term should be affirmed.

Judgment reversed.